ARKANSAS–BEST FREIGHT
SYSTEM, INC., et al.

v.

Frank D. COCHRAN, et al.

UNITED PARCEL SERVICE, INC.

v.

TENNESSEE PUBLIC SERVICE
COMMISSION, et al.

AVERITT EXPRESS, INC., et al.

v.

TENNESSEE PUBLIC SERVICE
COMMISSION, et al.

Nos. 80–3468, 80–3509 and 80–3637.

United States District Court,
M. D. Tennessee,
Nashville Division.

May 11, 1981.
As Amended June 10, 1981.

David Scruggs and Dale Woodall, Memphis, Tenn., Grant W. Smith and Eugene W. Ward, Robert L. Baker, Nashville, Tenn., for plaintiffs.

Hal D. Hardin, Jr., U. S. Atty., J. Kenneth Atkins and Mack H. Cherry, Jim G. Creecy & William B. Hubbard, Atty. General's Office State of Tenn., Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

## I. THE FACTS

The plaintiffs in these three actions all sought a temporary restraining order, declaratory judgment, and a permanent injunction, construing the application of Section 31(a)(1) of the Motor Carrier Act of 1980, 49 U.S.C. § 11503a (hereinafter "Section 31") to Tennessee's system of taxation of motor carrier transportation property.[1]

---

1. *Tax Discrimination against motor carrier transportation property*

(a) In this section—

(1) "assessment" means valuation for a property tax levied by a taxing district;

(2) "assessment jurisdiction" means a geographical area in a State used in determining the assessed value of property for ad valorem taxation;

(3) "motor carrier transportation property" means property, as defined by the Interstate Commerce Commission, owned or used by a motor carrier of property providing transportation in interstate commerce whether or not such transportation is subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title; and

(4) "commercial and industrial property" means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy.

(b) The following acts unreasonably burden and discriminate against interstate commerce and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) assess motor carrier transportation property at a value that has a higher ratio to the true market value of the motor carrier transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property;

(2) levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection;

(3) levy or collect an ad valorem property tax on motor carrier transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(c) Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of motor carrier transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. The burden of proof in determining assessed value and true market value is governed by State law. If the ratio of the assessed value of other commercial and industrial property in the assessment jurisdiction to the true market value of all other commercial and industrial property cannot be determined to the satisfaction of the district court through the random-sampling method known

The plaintiffs alleged that Tennessee's motor carrier property taxation system violated Section 31 and under the supremacy clause should not be allowed to stand. After the defendants asserted that Section 31, if applicable to the plaintiffs, amounted to an unconstitutional encroachment on the state's taxing power under the tenth amendment, the United States of America intervened on behalf of the plaintiffs for the purpose of defending the constitutionality of Section 31. The court issued a temporary restraining order later extended by agreement of the parties, prohibiting the assessment of taxes on the plaintiffs' property in excess of the amount allowed under Section 31, and the three actions were consolidated for trial.

The facts in the case were stipulated, and are as follows:

A. The plaintiffs, except for Kwick-Way Transportation Company (hereinafter "Kwick-Way"), G & C Entertainment Enterprises, Inc. (hereinafter "G & C"), and Stardust Tours, Inc. (hereinafter "Stardust"), are motor carriers subject to the regulations of the Interstate Commerce Commission (hereinafter I.C.C.) and the Tennessee Public Service Commission (hereinafter P.S.C.), and are operating throughout Tennessee.

B. The plaintiff Kwick-Way is a motor carrier holding authority issued by the P.S.C. for intrastate operations in Tennessee. Kwick-Way does not hold any certificates or permits issued by the I.C.C. However, Kwick-Way is the owner of Dearman Moving & Storage, a carrier operating in interstate commerce under certificates issued by the I.C.C. Dearman holds I.C.C. authority to transport telecommunications equipment and household goods. Some of Kwick-Way's transportation properties, i.e.,

equipment, are under long-term lease to Dearman and are used by Dearman in interstate commerce.

C. Plaintiffs G & C and Stardust are motor carriers holding operating authority issued by the P.S.C. for intrastate operations in Tennessee. These plaintiffs hold themselves out to the general public to conduct tours within the City of Nashville and surrounding areas for both local and out-of-state passengers. These plaintiffs hold no operating authority issued by the I.C.C. However, they also provide tours within the City of Nashville for I.C.C.-authorized interstate tour companies and brokers who bring touring groups in from outside the State of Tennessee to Nashville.

D. The defendants, P.S.C. and State Board of Equalization of Tennessee, are agencies of the State of Tennessee and are charged by law with the duty to determine annually the valuation of all taxable property of motor carriers in the State of Tennessee for property tax purposes. The applicable statutes concerning valuation and assessment of motor carrier transportation property are Tenn.Code Ann. § 67–601 *et seq.*

E. By constitution and statute, Tennessee has established a classified property tax. Operating property of motor carriers is classified as "public utility property" and is required to be assessed for property tax purposes at fifty-five percent (55%) of value. "Commercial and industrial property" as defined in Tennessee statutes is otherwise classified and is required to be assessed for property tax purposes at forty percent (40%) of value for real property and at thirty percent (30%) of value for personal property. The applicable constitutional provisions and statutes are Tenn.Const., Ar-

---

as a sales assessment ratio study (to be carried out under statistical principles applicable to such a study), the court shall find, as a violation of this section—

(1) An assessment of the motor carrier transportation property at a value that has a higher ratio to the true market value of the motor carrier transportation property than the assessment value of all other property subject to a property tax levy in the assess-

ment jurisdiction has to the true market value of all other commercial and industrial property; and

(2) the collection of ad valorem property tax on the motor carrier transportation property at a tax rate that exceeds the tax ratio rate applicable to taxable property in the taxing district.

49 U.S.C. § 11503a.

ticle II, Section 28, and Tenn.Code Ann. § 67–601 *et seq.*

F. The plaintiffs' (other than Kwick-Way, G & C, and Stardust) operating property in Tennessee is "motor carrier transportation property" as that phrase is used in the Motor Carrier Act of 1980, 49 U.S.C. § 11503a.

G. If plaintiffs' "motor carrier transportation property" is assessed at the fifty-five percent (55%) rate it would exceed by thirty-eight percent (38%) the forty percent (40%) ad valorem tax assessment rate applicable to the commercial and industrial real property classification under Article II, Section 28 of the Tennessee Constitution, and exceed by eighty-three percent (83%) the thirty percent (30%) assessment rate applicable to the commercial and industrial tangible personal property classification under Article II, Section 28 of the Constitution of the State of Tennessee.

H. The defendants, P.S.C. and State Board of Equalization, in administrative hearings before the respective bodies denied the relief sought by the plaintiffs under the Motor Carrier Act of 1980.

## II. JURISDICTION

This court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, since the case clearly arises under the Constitution and laws of the United States, and the amount in controversy exceeds $10,000. The plaintiffs seek to invoke the protection of an act of Congress and claim that the effect of the challenged state taxation system is to deny them the protection intended by Section 31. Furthermore, Section 31 itself acts to confer jurisdiction on this court for alleged violations of the section. 49 U.S.C. § 11503a(c).

## III. ISSUES PRESENTED

As postured, with all pertinent facts stipulated, this case presents pure questions of law for the court's resolution. These are:

1. Whether the Tennessee property tax classification system embodied in the Tennessee Constitution and the Tennessee stat-utes governing assessment and taxation of motor carrier transportation property violates the terms of Section 31 and conflicts with its purpose.

2. Whether Section 31 was a valid exercise of the power of Congress to regulate interstate commerce, as limited by the tenth amendment to the United States Constitution.

3. Whether Section 31 applies to the assessments and taxation of the plaintiffs' motor carrier transportation property for the 1980 tax year.

4. Whether Section 31 applies to plaintiff Kwick-Way, even though Kwick-Way is not within the jurisdiction of the I.C.C.

5. Whether Section 31 applies to plaintiffs G & C and Stardust, even though those plaintiffs are engaged in the transportation of persons rather than property.

6. Whether Section 31 as applied violates the Equal Protection Clause of the United States Constitution.

## IV. DISCUSSION

A. *Tennessee's property tax classification system violates the letter and the intent of Section 31.*

■ Section 31 declares that the following acts unreasonably burden and discriminate against interstate commerce and forbids a state from doing them:

(1) assess[ment of] motor carrier transportation property at a value that has a higher ratio to the true market value of the motor carrier transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property;

. . . .

(3) levy[ing] or collect[ion of] an ad valorem property tax on motor carrier transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

The section goes on to define "commercial and industrial property" as:

property other than transportation property or land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy.

Article II, Section 28 of the Tennessee Constitution sets forth the classification system of property for purposes of taxation in Tennessee. Real property is classified as:

1. public utility property;
2. industrial and commercial property;
3. residential property; and
4. farm property.

Tangible personal property is classified as:

1. public utility property;
2. industrial and commercial property; and
3. other tangible personal property.

"Industrial and commercial property" is defined in Tenn.Code Ann. § 67–601(8) (1976) to include "all property of every kind used, directly or indirectly, or held for use, for any commercial . . . industrial . . . or similar purpose . . . ." Tenn.Code Ann. § 67–601(4) (1976) further defines "commercial and industrial tangible personal property" to include "personal property . . . used essentially and principally for the commercial or industrial purposes . . . for which it is intended . . . ." On the face of these definitions, motor carrier property would appear to be included. However, the definition of "public utility property" in the Tennessee Code specifically includes "motor bus and/or truck companies holding a certificate of convenience and necessity or contract hauler's permit from the Tennessee public service commission or the interstate commerce commission . . . ." Tenn.Code Ann. § 67–601(7)(11) (1976). This specific reference to motor carriers thus overrides the more general definitions of "commercial and industrial property" and requires the conclusion that motor carriers are taxed in Tennessee as public utilities.

Having determined that the plaintiffs' property is "public utility property" rather than "industrial and commercial property," it is necessary to note the differing assessment ratio levels utilized in the Tennessee statutes as to each of these classifications. As stipulated by the parties, public utility real property is assessed at fifty-five percent (55%) of its value, and commercial and industrial real property is assessed at forty percent (40%) of its value. Thus, public utility real property, including that owned by motor carriers, is assessed at a rate thirty-eight percent (38%) higher than the assessment rate applicable to commercial and industrial real property in general. Public utility tangible personal property is assessed at fifty-five percent (55%) of its value, while commercial and industrial tangible personal property is assessed at thirty percent (30%) of its value, a discrepancy of some eighty-three percent (83%).

It is therefore clear that the Tennessee taxing statutes violate the express terms of Section 31, by requiring a higher assessment rate to be applied to motor carrier property (classified as "public utility property") than the rate applied to commercial and industrial property generally. And, since "the ratio of assessed value to true market value of motor carrier transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction," 49 U.S.C. § 11503a(c), the plaintiffs are entitled to relief in this court.

■ The state has advanced a statutory construction argument in an effort to uphold its classification system that, while without merit, should be mentioned briefly. It is asserted that the definitions of "commercial and industrial property" contained in Section 31 and the Tennessee statutes are not coextensive. Rather, it is noted that the federal definition is broader, encompassing most if not all of the property included in Tennessee's "public utility property" classification, as well as that in Tennessee's "commercial and industrial" classification. The state therefore asks the court to conclude that since the taxes assessed on motor carrier transportation property are no higher than those assessed on some other property within the federal definition of

"commercial and industrial property," there has been no discrimination within the meaning of Section 31.

However, the court cannot accept this argument. The plain meaning of Section 31 is to prohibit discrimination against motor carrier transportation property vis-a-vis other commercial and industrial property generally. The state cannot escape the federal prohibition simply by including some additional "commercial and industrial" property within the "public utility property" classification subject to higher tax rates. The clear fact remains that much, indeed most, of the property within the Section 31 definition of "commercial and industrial property" is taxed by the State of Tennessee at a rate much lower than that assessed on motor carrier transportation property. This is precisely the sort of disparate treatment which Congress attempted to eliminate through the enactment of Section 31. An escape valve as readily available as the one advanced by the state in this case would render Section 31 and its protection against discriminatory tax treatment a virtual nullity, and this court will not sanction such a departure from the clear import of the statutory language.

B. *Section 31 of the Motor Carrier Act of 1980 was a valid exercise of congressional power under the commerce clause.*

■ The plenary power of Congress under the commerce clause is well established and needs little citation. This power encompasses the regulation of commerce itself as well as those activities affecting interstate commerce. *Heart of Atlanta Motel v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). The power includes the power to control state taxation affecting interstate commerce. *Arizona Public Service Co. v. Snead,* 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106 (1979). For a thorough discussion of the cases bearing on the power of Congress to affect state taxing power through commerce clause legislation, *see*

*State of Tennessee v. Louisville & N. R. Co.,* 478 F.Supp. 199 (M.D.Tenn.1979).

Judge Wiseman's thoughtful as well as thorough opinion in the *L & N* case, *id.* is particularly relevant to the issues now before the court, since the court in that case upheld the application of Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4R Act"), in the face of challenges by the State of Tennessee which were identical to the arguments raised in the case at bar. Section 306 of the 4R Act is virtually identical to Section 31 of the Motor Carrier Act of 1980, except that it obviously concerns state taxation of railroads rather than motor carriers. In holding that Section 306 was a permissible exercise of congressional power under the commerce clause, Judge Wiseman discussed in detail the various court decisions on commerce clause legislation with an effect on state taxation. That discussion is fully applicable here and will therefore be adopted by reference. 478 F.Supp. at 202–08.

■ Suffice to say that the court can discern no distinction between Section 31 of the Motor Carrier Act and Section 306 of the 4R Act sufficient to warrant in this case a result different from that reached in the *L & N* case. In both cases, the state advanced the argument that the tenth amendment limits the power of Congress to legislate pursuant to the commerce clause in areas affecting the ability of states to levy and collect taxes. But as noted *supra,* the constitutional power of Congress under the commerce clause clearly permits some limitation on the states' power of taxation. As long as the legislation is rationally related to the goal of protecting interstate commerce or the instrumentalities thereof, the mere fact that a state taxation system is affected does not itself invalidate the legislation. *See Arizona Public Service Co. v. Snead,* 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106 (1979).

■ In the present case, the court concludes that Congress had a rational basis for concluding that discrimination against motor carriers of property in interstate commerce, by a state in its property taxa-

tion system, constitutes an unreasonable burden on interstate commerce. Congress' determination that discriminatory tax treatment unduly burdens interstate commerce was made in accordance with "a new Federal policy ... to promote a competitive and efficient motor carrier industry ...." H.R.Rep.No.96–1069, 96th Cong. 2d Sess., reprinted in 1980 U.S.Code Cong. & Ad. News 2283, 2285. Such a policy is surely expressive of legitimate governmental interests under the constitutional power to regulate interstate commerce.[2] The court believes that Section 31 was an entirely reasonable and legitimate response to the perceived burden and was therefore within the power of Congress to enact.

The state is correct in pointing out that the tenth amendment may in a proper case serve to limit the power of Congress under the commerce clause. *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). However, the court agrees with Judge Wiseman's decision in the *L & N* case that *National League of Cities* and the tenth amendment do not require invalidating the legislation here under review. *National League of Cities* invalidated the application of federal minimum wage requirements to state employees, and held that the tenth amendment effectively limits the power of Congress to regulate essential functions traditionally performed by the states. Thus, if a particular activity is traditionally an essential function of state government (*e.g.,* the hiring and supervision of state employees), Congress may not interfere, even though the activity broadly affects interstate commerce.

As pointed out by Judge Wiseman, the Supreme Court in *National League of Cities* did not state a test for general application in judging the validity of federal legislation which affects the states' ability to perform functions arguably reserved under the tenth amendment. 478 F.Supp. at 206. However, as suggested by Mr. Justice Blackmun's concurring opinion in *National League of Cities,* the Court appears to have used a balancing test to determine whether the interests of the state in the activity sought to be regulated are strong enough to outweigh the asserted goals of Congress in protecting interstate commerce. 426 U.S. at 856, 96 S.Ct. at 2476, 49 L.Ed.2d at 260 (Blackmun, J., concurring). Such an approach is consistent with Supreme Court cases prior to *National League of Cities, e.g., Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945), and was employed by this court in *L & N, supra,* as well as by other federal courts since *National League of Cities, e.g., Arizona v. Atchison, Topeka & Santa Fe R. R. Co.,* No. 78–655 (D.Ariz. Jan. 26, 1979). Thus the court will now use such a balancing approach to determine whether Section 31 passes muster under that test as well as the rational basis test, *supra.*

The goals of Congress in enacting Section 31 have been previously discussed and need not be repeated here. The interests of the State of Tennessee in maintaining a discriminatory taxation system, however, are not so readily apparent. That is not to say that the state has no interest in collecting the greatest possible amount of tax revenue, nor is it to suggest an absence of state interest in some sort of property classification for taxation purposes. To the contrary, those are clearly legitimate and vital state interests.

However, the essential nature of those interests is not affected by Section 31 and thus cannot be effectively asserted in opposition to the application of that section. The state's ability to raise a particular amount of revenue by virtue of ad valorem property taxation will not be impaired by Section 31 (except as it relates to the 1980 tax year, which will be discussed, *infra* ). Rather, Tennessee will simply be required not to discriminate against motor carriers vis-a-vis commercial and industrial property generally in the collection of property tax-

---

**2.** Interestingly, Section 31 is part of a comprehensive statute designed to substantially reduce federal regulation of the motor carrier industry, as well as promote greater competition. *See* H.R.Rep. 96–1069, *supra,* 1980 U.S. Code Cong. & Ad.News 2283.

es. Nothing in Section 31 prohibits adjustments in the commercial and industrial property tax rates in order to produce revenue equal to that currently collected. Similarly, Section 31 does not require Tennessee to abandon its entire property tax classification system, nor to tax all classes of property at the same rates. All that is required is that motor carriers be taxed at the same rates as other commercial and industrial property, and the state has advanced no legitimate interest in support of its opposition to that requirement.

Thus, on balance, the federal interest in promoting interstate commerce by encouraging an efficient and competitive motor carrier system clearly outweighs any interest of Tennessee in taxing the property of motor carriers at rates higher than commercial and industrial property generally. Therefore, under the balancing test as well as the rational basis approach, Section 31 must be upheld as a valid exercise of the power of Congress under the commerce clause.

C. *Section 31 applies to 1980 assessments.*

The state has argued that even if Section 31 is otherwise valid and fully applicable to the plaintiffs' property, its July 1, 1980, effective date was too late to affect 1980 assessments. The state contends that an immutable assessment date of January 1 is established by Tenn.Code Ann. § 67–603 (1976), and that attempted modifications after that assessment date are ineffective as to that particular tax year. Furthermore, it is argued that it would be inherently unfair to the state in its attempt to raise revenues to allow federal modification of the taxing scheme midway through the tax year, without the benefit of notice that such a modification was planned and at a time too late to allow the state to adjust its budgetary planning.

■ Tenn.Code Ann. § 67–603 (1976) provides, in relevant part, as follows: "All assessments of real property and of personal property shall be made annually and as of January 1 for the year to which the assessment applies, unless otherwise provid-

ed for . . . ." However, despite this statute, it is undisputed that the actual act of making the assessments on the plaintiffs' property in this case occurred after July 1, 1980. The court concludes, consistent with Judge Wiseman's opinion in *L & N*, that the doctrine of federal supremacy requires the application of Section 31 in the year in which it took effect, as to all assessments actually made after the effective date.

The state's contention that the absence of a particular effective date in Section 31 evidences lack of any Congressional intention as to the effective date is without merit. It is true that the 4R Act did include an affirmative effective date, and that Congress could well have chosen a similar course in drafting the Motor Carrier Act. However, it cannot be said that the decision not to do so was designed to allow the states to delay the implementation of any corrective measures occasioned by the Act. Rather, it seems more likely that the absence of an express phase-in period such as was included in the 4R Act is evidence of an intent to make the Motor Carrier Act immediately effective. The court can discern no valid legal reason for delaying the implementation of Section 31.

The argument that application of Section 31 to the 1980 tax year unfairly hampers the state in its ability to collect revenues under a budget already in place when the section became effective has a certain amount of equitable appeal. These are difficult economic times, and states certainly feel the impact of inflation along with the federal government and the citizens in general. And, the unavailability of tax monies which had been included in the state's budget will undoubtedly create further fiscal problems for state officials. However, the court does not believe that this unfortunate state of affairs is a compelling legal reason to delay the full implementation of an act of Congress.

Rather, the conclusion is inescapable that Congress determined to take immediate action to alleviate some of the competitive disadvantages to which motor carriers had been subjected at the hands of the states.

Such immediate action was certain to have substantial impact upon those states, like Tennessee, which discriminated against motor carriers in the taxation of property. Yet despite this certain impact, the Motor Carrier Act contained no phase-in period such as had been included in the 4R Act. The court concludes that immediate implementation of the Motor Carrier Act was intended and that the adverse impact on states in violation of the provisions of the Act is insufficient reason to subvert that intent.

Furthermore, making Section 31 immediately effective is consistent even with Tennessee law, which gives immediate effect to legislative changes in the taxing system despite the date on which the changes are signed into law. *See McCord v. Nashville, Chattanooga & St. L. Ry.,* 187 Tenn. 277, 213 S.W.2d 196 (1948). In that case, the Court gave immediate effect to amendments requiring the biennial assessment of railroad property in the odd rather than the even years previously established, even though a two-year assessment had already been made in the previous year.

Thus, in the present case, while the immediate application of Section 31 is mandated by the supremacy clause of the United States Constitution, the court concludes that a contrary result would not be mandated by Tennessee law and holds that Section 31 is fully applicable to all 1980 property tax assessments actually made after July 1, 1980.

D. *Section 31 applies to plaintiff Kwick-Way Transportation Company, even though Kwick-Way's activities are intrastate.*

The state has argued that Section 31 should not apply to those carriers whose activities are restricted to the State of Tennessee. This argument is based on the language in Section 31 which makes the section applicable to any "motor carrier of property providing transportation in interstate commerce . . . ." The parties have stipulated that plaintiff Kwick-Way operates under authority issued by the Tennessee P.S.C. for intrastate operations in Tennessee, and does not hold any I.C.C. permits or certificates for interstate operations.

While the state admits both that Congress has the power to regulate purely intrastate activities which affect interstate commerce and that Motor Carrier Act applies to some carriers which are exempt from I.C.C. regulation, it is nevertheless asserted that all carriers subject to the provisions of Section 31 must engage in some interstate transportation. To the extent that such reasoning requires an effect on interstate commerce, it is surely correct. However, the court cannot accept the argument that actual travel between states is necessary to make a particular carrier subject to Section 31.

A carrier which delivers goods that originated in or are ultimately destined for another state is clearly operating in the stream of interstate commerce, and thus is subject to the constitutional authority of Congress under the commerce clause. The legislative history of Section 31 plainly demonstrates that the reach of that section is broader than the jurisdiction of the I.C.C. H.R.Rep.No.1069, *supra,* 1980 U.S.Code Cong. & Ad.News at 2327. Even the language of Section 31 itself makes this broader effect clear. 49 U.S.C. § 11503a(a)(3). The court holds that this broader effect was intended to encompass those carriers which transport goods in the stream of interstate commerce, even if the individual carrier travels only intrastate. Thus, assuming that Kwick-Way transports goods which either had their origin in, or are destined for ultimate delivery outside of Tennessee,[3] it is

---

**3.** There was no stipulation on this point and no additional evidence was offered at the hearing. However, given the realities of contemporary commercial transactions, it is virtually inconceivable that goods of any sort are wholly outside the stream of interstate commerce. All

goods produced and sold clearly have an impact on interstate commerce within the broadest meaning of that term under the commerce clause. *See Wickard v. Filburn, supra,* and *Heart of Atlanta Motel v. United States, supra.* Despite the reach of those cases, the court does

engaged in the transportation of goods in interstate commerce within the meaning of Section 31. Furthermore, regardless of the origin or destination of the goods transported by Kwick-Way, that property which it owns and leases to interstate carriers is clearly entitled to the protection of Section 31.

**E. Section 31 does not apply to plaintiffs G & C Entertainment Enterprises, Inc., and Stardust Tours, Inc.**

▮▮ As noted above, Section 31 prohibits discrimination in taxation against "motor carrier transportation property." The term "motor carrier transportation property" is defined in relevant part as follows: "[P]roperty ... owned or used by a *motor carrier* of *property* ...." 49 U.S.C. § 11503a(a)(3) (emphasis added). Plaintiffs G & C and Stardust transport people, not property, and thus fall outside the express terms of the statute. Therefore, these plaintiffs are not entitled to the protection of Section 31, and the temporary restraining order previously entered and extended by agreement of the parties pending the outcome of this action, must be lifted as to both G & C and Stardust.

**F. The application of Section 31 does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.**

Finally, the state has raised an equal protection argument on behalf of any motor carriers operating in Tennessee which are not entitled to the protection of Section 31. It is argued that the favored treatment given those carriers within the purview of Section 31 arbitrarily discriminates against those carriers not covered by the statute. This argument must be rejected both because of the state's lack of standing to raise it and because it is wholly devoid of merit.

Although the requirement of standing to assert constitutional claims may not be of constitutional origin, but simply a matter of judicial self-restraint, it is nevertheless well established. The Supreme Court noted some 28 years ago that:

[o]rdinarily, one may not claim standing ... to vindicate the constitutional rights of some third party ... The requirement of standing is often used to describe the constitutional limitation on the jurisdiction of this Court to "cases" and "controversies." ... Apart from the jurisdictional requirement, this Court has developed a complementary rule of self-restraint which ordinarily precludes a person from challenging the constitutionality of state action by invoking the rights of others. The common thread underlying both requirements is that a person cannot challenge the constitutionality of a statute unless he shows that he himself is injured by its operation.

*Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586, 1594–95 (1953). *See also, United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

▮▮ In the present case, the state is indeed in a poor position to assert the constitutional rights of unaffected motor carriers. If there exists discrimination against such carriers, it exists by virtue of the state's tax classification scheme, and not because of Section 31. It is thus clear that not only is the state itself not injured by the asserted discrimination (it is able to assess higher taxes on the property of exempt carriers) but is also itself the cause of the discrimination of which it complains. If carriers outside the scope of federal protection are in fact discriminated against, it is the state which is in a position to provide the remedy. It is difficult to envision a case where standing to raise a constitutional claim is more glaringly absent.

---

not believe that Congress went so far in Section 31. Rather, the language "providing transportation in interstate commerce," 49 U.S.C. § 11503a(a)(3), seems to require that the property actually be a part of the stream of interstate commerce and not merely affect com-

merce in the broadest sense. The court's holding as to Kwick-Way is therefore limited in this respect: Section 31 applies only if the carrier transports goods originating in or destined for out of state.

Even if the state were somehow able to conjure sufficient standing to assert its equal protection argument, however, it would surely fail on its merits. In cases where the challenged classification involves neither a fundamental right nor a "suspect" class such as race, the proper standard of review is a rational basis test. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Thus, as long as the statutory classification is rationally related to a legitimate governmental interest, the statute will be allowed to stand. And, as discussed, *supra,* Section 31 is clearly rationally related to a legitimate governmental interest. That discussion is fully applicable here and will not be repeated.

## V. CONCLUSION

The court concludes that Tennessee's system of taxing motor carrier transportation property, as defined in Section 31 of the Motor Carrier Act of 1980, at rates higher than the rates assessed on commercial and industrial property in the state, violates the prohibitions of Section 31, and must therefore be declared invalid. The enactment of Section 31 was within the constitutional power of Congress under the commerce clause. Section 31 applies to all motor carriers of goods in interstate commerce, including carriers of goods which either originate or are destined for delivery outside the State of Tennessee, even if such carriers actually travel only intrastate.

An order will be entered permanently enjoining the assessment of taxes in violation of Section 31, as to all plaintiffs except G & C Entertainment Enterprises, Inc., and Stardust Tours, Inc. For the reasons stated above, Section 31 does not apply to these two plaintiffs, and the temporary restraining order previously issued as to those plaintiffs will be dissolved.

## ORDER

In accordance with the memorandum contemporaneously filed, it is ordered that the State of Tennessee is hereby permanently enjoined from assessing property taxes on motor carrier transportation property, as defined in Section 31 of the Motor Carrier Act of 1980, in excess of the assessment rates applicable to commercial and industrial property in the state. It is further ordered that any assessments made in violation of Section 31 of the Motor Carrier Act of 1980 for the 1980 tax year be reduced to an amount not in excess of the assessments made on other commercial and industrial property of like value. It is further ordered that Section 31 of the Motor Carrier Act of 1980 is hereby held applicable to all motor carriers of property moving in the stream of interstate commerce, whether or not a particular motor carrier actually travels across state lines.