723 F.2d 365
 ARKANSAS-BEST FREIGHT SYSTEM, INC.; Carolina Freight
Carriers Corporation; Consolidated Freightways Corporation;
ET & WNC Transportation Company; Overnite Transportation
Company; Roadway Express, Inc.; Ryder Truck Lines, Inc.;
Spector-Red Ball, Inc.; Thurston Motor Lines, Inc.;
Transcon Lines; Yellow Freight System, Inc.; Smith
Transfer Corporation and Chemical Leaman Tank Lines, Inc., Appellants,
v.
Mark G. LYNCH, Secretary of Revenue of the State of North
Carolina; Douglas R. Holbrook, Director, Ad Valorem Tax
Division of the North Carolina Department of Revenue;
Alamance County; Buncombe County; Burke County; Catawba
County; Durham County; Edgecombe County; Forsyth County;
Granville County; Halifax County; Henderson County;
Iredell County; Martin County; Mecklenburg County; Moore
County; Nash County; New Hanover County; Onslow County;
Pender County; Randolph County; Robeson County;
Rockingham County; Rowan County; Surry County; Union
County; Wake County; Wayne County; Wilkes County and
Wilson County, Appellees.
 No. 82-1769.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 8, 1983.
Decided Dec. 20, 1983.
 
 David C. Scruggs, Memphis, Tenn. (Russell Dale Woodall, Memphis, Tenn., on brief), for appellants.
 Hamlin L. Wade, Charlotte, N.C. (Ruff, Bond, Cobb, Wade & McNair, Charlotte, N.C., George W. Boylan, Asst. Atty. Gen., Raleigh, N.C., W. Gene Sigmon, Sigmon, Sigmon & Isenhower, Newton, N.C., on brief), for appellees.
 Before WINTER, Chief Judge, WIDENER, Circuit Judge, and BRYAN, Senior Circuit Judge.
 WIDENER, Circuit Judge:
 
 
 1
 Certain carriers operating in North Carolina brought this action against the North Carolina Secretary of Revenue and the Director of the Ad Valorem Tax Division of the North Carolina Department of Revenue[1] claiming discrimination in their 1980 and 1981 property taxes under 49 U.S.C. Sec. 11503a. Finding no violation of the statute, the district court granted defendants' motion for summary judgment, and we affirm.
 
 
 2
 In 1980 Congress passed the Motor Carrier Act of 1980, 49 U.S.C. Sec. 11503a, which prohibited States and political subdivisions from taxing motor carrier transportation property at a higher ratio of true market value than other commercial and industrial property in the same assessment jurisdiction.[2] The language of that statute parallels the language of the Railroad Revitalization and Regulatory Reform Act, (4-R Act), 49 U.S.C. Sec. 11503, initially enacted in 1976.[3] The Bus Regulatory Reform Act of 1982, P.L. 97-261, 96 Stat. 1102, was later passed to bring interstate bus lines into this legislative scheme. 1982 U.S.Code & Cong.News 2308, 2337. Through this series of statutes, Congress sought to eliminate the burden on interstate commerce resulting from the discriminatory taxing of interstate carriers by state and local governments.[4] See Senate Committee on Commerce, Discriminatory State Taxation of Interstate Carriers, S.Rep. No. 1483, 90th Cong., 2d Session 1 (1968) (commenting on S.927). The statute in terms finds such discriminatory taxation to "unnecessarily burden and discriminate against interstate commerce."
 
 
 3
 In North Carolina, locally-assessed real property is reappraised for taxation every eight years, N.C.Gen.Stat. Sec. 105-286. Locally assessed personal property is so reappraised every year. N.C.Gen.Stat. Sec. 105-285. The motor carriers' property involved in this action is their rolling stock.[5] Such personal property is appraised for taxation annually by the state Department of Revenue. N.C.Gen.Stat. Sec. 105-335(c)(2).
 
 
 4
 The motor carriers contend that they are being discriminated against under the statute because their rolling stock is being appraised for taxation at a higher ratio of true market value than is commercial and industrial real property. Such discrimination exists, they say, because rolling stock is reappraised annually while real property is only reappraised every eight years. The rolling stock appraised is at its current market value each year, thus keeping up with inflation and appreciation, either or both, while real property is not. The result is that rolling stock is therefore appraised for taxation at 100% of its true market value, while real property is assessed at less than 100%. Motor carriers base their entire claim for relief upon sales assessment ratio studies which, by definition, are based solely upon real estate.[6] They claim that Sec. 11503a designates sales assessment ratio studies as the preferred method of proof of tax discrimination, not only where real property tax ratios are being compared to the study ratios but also where, as here, personal property tax ratios are being compared to the real property tax ratios of the ratio study. Simply stated, motor carriers claim a violation of Sec. 11503a because their personal property is taxed at a higher effective rate than commercial and industrial real property, as evidenced by sales assessment ratio studies.
 
 
 5
 A disparity in the taxation of personal property and real property is permissible under the Act. The legislative history reveals that States can still validly tax these two types of property at different rates, as long as there is equality within each type.
 
 
 6
 "The language ... is not intended to interfere with the classification of property by a State for rate purposes into the traditional breakdown of real property, tangible personal property, and intangible property, provided that carrier transportation real property is taxed at no higher rate than other real property; that carrier transportation personal property is taxed at no higher rate than other personal property; and that carrier transportation intangibles are taxed at no higher rate than other intangible property. For example, S 927 would not effect (sic) a State tax of real property at 50 cents per $100 of assessed value and tangible personal property at $1 per $100 of assessed value. However, if the State sought to levy a $1 tax rate against carrier real property when the rate applied to real property of others was only 50 cents per $100 of assessed value, the higher rate would be proscribed under the terms of subparagraph (c) and the other rate would be applicable."
 
 
 7
 Senate Committee on Commerce, Discriminatory State Taxation of Interstate Carriers, S.Rep. No. 1483, 90th Cong., 2d Session 11 (1968).
 
 
 8
 Our opinion in Clinchfield Railroad Co. v. Lynch, supra, is to the same effect as S.Rep. 1483. There, discrimination in real estate taxation was shown by use of a sales assessment ratio study. The results of the study showed that the real property of the railroad in Mecklenburg County, N.C., for example, was being taxed at 100%, while the real property of other commercial and industrial taxpayers in the same county was being taxed at 72% of actual value. That disparity resulted from the annual reassessing of railroad property, while other real property was only reassessed every eight years. Thus, for tax purposes the railroad property appraisals kept pace with inflation and appreciation, either or both, while other real property did not.
 
 
 9
 Because of a lack of proof in the record in Clinchfield Railroad, the district court could not segregate the railroad's real property, which was being overtaxed, from its personal property. Because the State failed to carry its burden and segregate these properties, we affirmed the district court's judgment reducing the tax burden on all of the railroad's property, both real and personal.
 
 
 10
 We, however, rejected in terms the conclusion that percentages derived from sales assessment ratio studies of real property are to apply to inquiries regarding personal property. The language of the opinion could not be more clear. "We do not accept the proposition that only proof as to real estate discrepancies was to be obtained, and then applied indiscriminately to both personal property and real property owned or used by the railroads." 700 F.2d at p. 133.
 
 
 11
 The motor carriers ask us to do exactly what our decision in Clinchfield Railroad forbids. They claim discrimination because their personal property is taxed at a higher effective rate than commercial and industrial real property. Such a disparity is permissible under the statute. The motor carriers do not contend that their personal property is being appraised for taxation at a higher ratio than other commercial and industrial personal property is so appraised. That being the case, there is no discrimination under Sec. 11503a.
 
 
 12
 Because we find no violation under Sec. 11503a, the judgment of the district court is
 
 AFFIRMED.[7],[8]
 
 
 [1]
 Various counties of North Carolina were later added as defendants
 
 
 [2]
 49 U.S.C. Sec. 11503a provides in part:
 (b) The following acts unreasonably burden and discriminate against interstate commerce and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
 (1) assess motor carrier transportation property at a value that has a higher ratio to the true market value of the motor carrier transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property; ...
 
 
 [3]
 We therefore think the parties' reliance upon the relevance of the legislative history of the 4-R Act is correct
 
 
 [4]
 For a thorough discussion of the 4-R Act, see Clinchfield Railroad Co. v. Lynch, 700 F.2d 126 (4th Cir.1983)
 
 
 [5]
 While some of the motor carriers do own real property in North Carolina, they make no contention in this case as to the taxation of their real estate
 
 
 [6]
 Such figures are obtained by examining the stamps, etc., on recorded deeds and comparing that value to the appraised value for tax purposes. See Louisville & Nashville Railroad Co. v. Public Service Commission, 493 F.Supp. 162, 164, n. 2 (M.D.Tn.1978), aff'd 631 F.2d 426 (6th Cir.1980), cert. den. 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 384 (1981)
 
 
 [7]
 After oral argument but prior to the issuance of this decision, motor carriers moved this court to amend their complaint, such motion going both to jurisdiction and to the merits at hand. Motor carriers claim that such motion was necessitated by this court's opinion in Clinchfield Railroad Co. v. Lynch, 700 F.2d 126 (4th Cir.1983), which was decided February 3, 1983, five days before the argument of this case. We find that the motion to amend as to jurisdiction is without merit because motor carriers' original complaint already bases jurisdiction upon 49 U.S.C. Sec. 11503a. Motor carriers' motion does not in fact seek to amend its basis of jurisdiction, but seeks to present a new theory in light of Clinchfield Railroad
 In Clinchfield Railroad the sales-assessment ratio studies were applicable to the railroad's personal property only because the State had not separately assessed the real and personal property of the railroad. Clinchfield teaches that real property sales assessment ratio studies are not to be indiscriminately applied to personal property.
 In their motion, motor carriers contend that they submitted evidence in the district court showing discrimination in the valuation and taxation of their motor carrier transportation personal property, as compared to locally assessed personal property. The basis given for such a conclusion in the record is the affidavit of a certain Dr. Ekeblad. In that affidavit, Dr. Ekeblad stated, undoubtedly inadvertently, that "all locally-assessed property in North Carolina" was valued for property tax purposes at certain ratios set out county by county. An examination of that affidavit reveals that Dr. Ekeblad considered only real property in coming to his conclusion so that he could not have meant to express any opinion on the personal property assessments at all.
 Our conclusion is supported by an examination of the district court's opinion and the record in Clinchfield Railroad. Dr. Ekeblad's county by county breakdown of assessed value to true market value in this case is copied, even to the second decimal point of a percentage, from Appendix A of the district court's opinion in Clinchfield Railroad. That appendix deals only with real property, and the district court there so stated. Furthermore, the contents of Appendix A were stipulated by the Clinchfield parties. Those parties also stipulated that the figures in Appendix A of Clinchfield reflected the "ratios of assessment of commercial and industrial real estate for the 1980 tax year." (Emphasis added)
 Thus, Dr. Ekeblad's affidavit can in no way be construed as evidence tending to show discrimination as to the motor carriers' personal property since it deals solely with real property comparisons. We accordingly deny motor carriers' motion to amend.
 
 
 [8]
 Consent orders of dismissal as to Alamance, Burke, Halifax, Iredell, Randolph, Union, Onslow, and Wilkes Counties have been entered by us and filed immediately preceding the decision in this case