787 F.2d 292
 ABF FREIGHT SYSTEM, INC., Builders Transportation Company,
Campbell Sixty-Six, Chemical Leaman Tank Lines, Eagle Motor
Lines, Inc., FB Truck Line Co., East Texas Motor Freight
Lines, Inc., Gordons Transports, Inc., Lee Way Motor
Freight, Inc., Miller Transporters, Inc., North American Van
Lines, Pacific Intermountain Express, Roadway Express, Inc.,
Ruan Transport Corporation, Ryder Truck Lines, Inc.,
Spector-Red Ball, Inc., TIME D.C., Inc., Transcon Lines,
Wooten Transports, Inc. and Yellow Freight Systems, Inc., Appellants,
v.
TAX DIVISION OF the ARKANSAS PUBLIC SERVICE COMMISSION and
James Poe, in his capacity as Director of the Tax Division
of the Arkansas Public Service Commission; and Charles
Ragland, in his capacity as Commissioner of Revenue for the
State of Arkansas, Appellees.
ABF FREIGHT SYSTEM, INC., Builders Transportation Company,
Campbell Sixty-Six, Chemical Leaman Tank Lines, Eagle Motor
Lines, Inc., FB Truck Line Co., East Texas Motor Freight
Lines, Inc., Gordons Transports, Inc., Lee Way Motor
Freight, Inc., Miller Transporters, Inc., North American Van
Lines, Pacific Intermountain Express, Roadway Express, Inc.,
Ruan Transport Corporation, Ryder Truck Lines, Inc.,
Spector-Red Ball, Inc., TIME D.C., Inc., Transcon Lines,
Wooten Transports, Inc. and Yellow Freight Systems, Inc.,
B.J. McAdams, Inc. and Southern Trucking Corporation,
Intervenor/Appellants,
v.
TAX DIVISION OF the ARKANSAS PUBLIC SERVICE COMMISSION and
James Poe, in his capacity as Director of the Tax Division
of the Arkansas Public Service Commission; and Charles
Ragland, in his capacity as Commissioner of Revenue for the
State of Arkansas, Appellees.
 Nos. 85-1368, 85-1369.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1985.
Decided March 17, 1986.
 
 David C. Scruggs, Memphis, Tenn., for appellants.
 Curt L. Nebben, Asst. Atty. Gen., Little Rock, Ark., for appellees.
 Before HEANEY, FAGG and BOWMAN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 Plaintiffs and intervenors (collectively "the motor carriers") appeal from the District Court's entry of judgment in favor of defendants ("the State"). The motor carriers contend that the current ad valorem property taxation scheme in Arkansas discriminates against them in violation of the federal Motor Carrier Act of 1980 and the Arkansas Constitution. For the reasons discussed below, we affirm the judgment of the District Court.
 
 
 2
 * Finding that prevalent state taxation practices and systems unreasonably burdened and discriminated against interstate motor carriers, Congress enacted the Motor Carrier Act of 1980, Pub.L. No. 96-296, Sec. 31(a)(1), 94 Stat. 793, 823-24 (codified at 49 U.S.C. Sec. 11503a) ("the MCA").[1] Section 11503a provides, in relevant part, that states may not
 
 
 3
 assess motor carrier transportation property at a value that has a higher ratio to the true market value of the motor carrier transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property[.]
 
 
 4
 49 U.S.C. Sec. 11503a(b)(1).
 
 
 5
 The thrust of the motor carriers' claim under the MCA essentially is that their personal property[2] was assessed by the State for ad valorem tax purposes for tax years 1981 through 1983 at a higher "assessment ratio" than that applied to "other commercial and industrial property," in violation of section 11503a(b)(1).[3] The parties agree that the assessment ratio applied to all the motor carriers' personal property was twenty percent (20%). Stip. p 11, App. at 130. The parties disagree, however, as to the proper type of property against which to compare this 20% assessment ratio to determine whether motor carriers are discriminated against in violation of the MCA. In particular, the issue presented is what property should be included in the comparison to "other commercial and industrial property." The motor carriers contend that their 20% assessment ratio should be compared to and equalized with a single "overall assessment ratio" for all other commercial and industrial property, both real and personal. Under the motor carriers' theory, the overall assessment ratio should be calculated according to a "value weighted mean" formula. The State, on the other hand, contends that the proper comparison is not against all other commercial and industrial property considered in the aggregate, but only against other commercial and industrial personal property. In other words, the State contends that we should compare only the assessment ratios for personal property. Thus, the question we must decide is what property is within the scope of the definition of "other commercial and industrial property" as used in the MCA against which to compare the 20% assessment ratio applied to the motor carriers' personal property.
 
 
 6
 This dispute arose because of a de facto classification of property, with a higher assessment ratio for personal property than for real property, for purposes of ad valorem taxation by the state of Arkansas and its taxing authorities. This de facto classification violates state law.[4] The Arkansas Constitution provides that "[n]o one species of property for which a tax may be collected shall be taxed higher than another species of property of equal value...." Ark. Const. art. 16, Sec. 5. A state statute further provides that "[t]he assessed value of real and personal property in each county shall be placed on the tax record ... at twenty per centum (20%) of the true and full market or actual value...." Ark.Stat.Ann. Sec. 84-477.[5]
 
 
 7
 The State readily acknowledges that a de facto classification exists. In fact, the parties have prepared a chart that lists the various de facto classifications of commercial and industrial property, the total dollar amount of assessed value and true market value for each classification, the assessment ratio for each classification, and an "overall assessment ratio" for all commercial and industrial property calculated according to a "value weighted mean" formula for tax years 1981 through 1983. App. at 136. That chart is reproduced in Appendix A to this opinion. It is this overall assessment ratio for each of the three tax years (i.e., 1981--15.46%; 1982--15.01%; 1983--14.84%) with which the motor carriers seek to be equalized. The State, however, argues that since the assessment ratio for other commercial and industrial personal property is 20%--the same as that applied to the motor carriers' personal property--there is no discrimination against motor carriers.
 
 
 8
 The District Court[6] held that the state ad valorem property taxation system did not discriminate against motor carriers in violation of the MCA. The court agreed with the State's theory that since all personal property was assessed at 20%, there was no discrimination against motor carriers. App. at 182. In so holding, the District Court made three related conclusions of law. First, the court concluded that under the MCA states are not barred from distinguishing between traditional classifications or species of property for purposes of applying different assessment ratios. Second, the fact that the de facto classifications violate state law is of no relevance in determining whether the de facto classifications discriminate against motor carriers in violation of the MCA. Third, the court concluded that under the facts of this case the proper comparison to determine whether the state scheme discriminates against motor carriers in violation of the MCA is between the assessment ratios for personal property only. In other words, the motor carriers' 20% assessment ratio for personal property is not to be compared against the overall assessment ratio of all other commercial and industrial property, real and personal. App. at 180-86.[7]
 
 II
 
 9
 We consider first the motor carriers' contention that the District Court erred in its conclusion that the violations of state law inherent in Arkansas's de facto classification system were irrelevant in analyzing the motor carriers' federal claim under the MCA. In essence, the motor carriers' argument seems to be that the State's de facto classifications in violation of state law resulted in unequal application of state law; that unequal application of state law violates the equal protection clause of the Fourteenth Amendment to the federal constitution; that the same "tax equalization" principles applied in the equal protection context apply equally under the MCA; and, therefore, that a violation of state law constitutes a violation of the MCA. We are not persuaded by this argument.
 
 
 10
 The motor carriers' underlying premise is flawed in that it assumes that a violation of equal protection ipso facto is a violation of the MCA. We may assume, arguendo, that the state's de facto classifications deprive the motor carriers, along with other owners of personal property in Arkansas, of the equal protection of the law. The motor carriers' cause of action, however, is based not on the Fourteenth Amendment, but on the MCA. There is nothing in either the language of the MCA or the Railroad Revitalization and Regulatory Reform Act, 49 U.S.C. Sec. 11503 ("the 4-R Act") or their legislative histories that indicates that equal protection analysis is to be applied in claims under those statutes. Nor do the motor carriers cite to any case so holding. Indeed, under the motor carriers' novel theory, the mere existence of a de facto classification in violation of state law would necessarily constitute a violation of the MCA. This theory finds no support in the prior cases challenging as discriminatory under the MCA or the 4-R Act a de facto classification system. In those cases, the courts never have suggested even remotely that equal protection analysis is to be used in deciding the carriers' statutory claims. See, e.g., Atchison, Topeka & Santa Fe Railway v. Lennen, 732 F.2d 1495 (10th Cir.1984); Arkansas-Best Freight System, Inc. v. Lynch, 723 F.2d 365 (4th Cir.1983); Clinchfield Railroad v. Lynch, 700 F.2d 126 (4th Cir.1983). No court ever has endorsed the view that proof of a de facto classification in violation of state law constitutes without more proof of discrimination under the MCA. The motor carriers' reasoning misunderstands the nature of a challenge to a state taxation scheme alleging de facto discrimination under the MCA. It is not de facto classifications that violate the MCA, but rather de facto discrimination against motor carriers. We agree with the District Court that the fact that the de facto classifications violate state law is irrelevant to an analysis of the motor carriers' claim under the MCA.
 
 
 11
 Our discussion above also applies in part to the motor carriers' contention that states cannot distinguish between species of property in violation of state law for the purpose of applying different assessment ratios to each. We do not believe that in enacting the 4-R Act and the MCA that Congress intended to mandate the abolition of traditional classifications of property by the states for the purpose of applying different rates of taxation or assessment. Congress mandated only that the same rates applied to the property of other commercial and industrial property owners be applied to railroad and motor carrier property. See, e.g., Arkansas-Best Freight System, Inc. v. Lynch, 723 F.2d at 367 ("A disparity in the taxation of personal property and real property is permissible under the Act."); ACF Industries, Inc. v. Arizona, 714 F.2d 93, 94 (9th Cir.1983); Clinchfield Railroad v. Lynch, 700 F.2d at 132, 133 n. 11; Arkansas-Best Freight System, Inc. v. Cochran, 546 F.Supp. 904, 909 (M.D.Tenn.1981); cf. Senate Committee on Commerce, Discriminatory State Taxation of Interstate Carriers, S.Rep. No. 1483, 90th Cong., 2d Sess. 11 (1968) (stating that S. 927, a bill similar to the 4-R Act, was "not intended to interfere with the classification of property by a State for rate purposes into the traditional breakdown of real property [or] tangible personal property ... provided that ... carrier transportation personal property is taxed at no higher rate than other personal property...."). That such a classification, with different assessment ratios for real and personal property, results solely from the State's failure to follow state law is of no consequence.
 
 
 12
 The motor carriers' final contention is that their personal property assessment ratio must be compared against a single "overall assessment ratio" for all other commercial and industrial property, both real and personal, calculated according to a "value weighted mean" formula. Thus, they argue, the District Court erred in using the 20% assessment ratio for only other commercial and industrial personal property (as set forth in Appendix A) against which to compare the 20% assessment ratio applied to their personal property.
 
 
 13
 The motor carriers' argument is based in large part on inferences drawn from the statutory language, statutory definitions, and legislative histories of the MCA and 4-R Act. Specifically, the motor carriers contend that the preferred methods of proof of assessment ratios contained in subsection (c) of the MCA and the original statutory definition of "commercial and industrial property" contained in the 4-R Act compel the conclusion that both real and personal property are to be considered in calculating an overall assessment ratio of other commercial and industrial property.
 
 
 14
 The motor carriers point out that "commercial and industrial property" originally was defined in the 4-R Act as "all property, real or personal ... which is devoted to a commercial or industrial use and which is subject to a property tax levy." Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94-210, Sec. 306, 90 Stat. 31, 55. Shortly after the enactment of the 4-R Act, the provisions of Title 49 of the United States Code were revised, and the Code Revisers omitted the words "real or personal" as surplus in 49 U.S.C. Sec. 11503. Congress took this language as it found it in using the 4-R Act as the basis for the Motor Carrier Act of 1980. Having the original definition in mind, however, the motor carriers contend that if Congress had intended that separate species of property be compared, there would have been little reason to refer to a sales assessment ratio study as the preferred means of proving the assessment ratio of "all other commercial and industrial property" in section 11503a(c). Because Congress was aware that such studies considered only real property, their argument goes, Congress also would have had to suggest the preferred method of proving the assessment ratio for other commercial and industrial personal property if only like types of property were to be compared. Instead, the MCA provides that if the sales assessment ratio study is not deemed sufficient proof of the assessment ratio for other commercial and industrial property, the proper comparison then is to the assessment ratio of "all other property subject to a property tax levy." 49 U.S.C. Sec. 11503a(c)(1).
 
 
 15
 The motor carriers cite to Atchison, Topeka & Santa Fe Railway v. Lennen, 732 F.2d 1495, 1504-05 (10th Cir.1984) as support for their position. In Lennen, the Tenth Circuit held that the district court had erred in allowing the plaintiff railroads "to prove the assessment ratio for all other commercial and industrial property by means of a study based on real estate only." Id. at 1503. The court required the plaintiffs to prove the assessment ratio for personal property as well. The court stated that each of the various assessment ratios should be factored into a "value weighted mean" formula[8] to determine the overall assessment ratio for "all other commercial and industrial property." Id. at 1504. The chart reproduced in Appendix A lists the overall assessment ratios for tax years 1981 through 1983 based on the value weighted mean formula suggested in Lennen.
 
 
 16
 We are not persuaded, however, that the approval of this method by one court precludes other forms of comparison in order to determine whether a state taxation scheme discriminates against motor carriers in violation of the MCA. Other courts have approved of comparisons involving only like categories of property.
 
 
 17
 In Clinchfield Railroad v. Lynch, 700 F.2d 126 (4th Cir.1983), the Fourth Circuit implicitly approved of separate analysis and comparison of real and personal property. Only because of a procedural quirk in state law in allocating the burden of production and proof to the state did the court affirm the district court's holding that the assessment ratio of all railroad property, real and personal, was to be reduced to the assessment ratio calculated in each county for real estate only.
 
 
 18
 The court recognized that the federal statute was "directed at practices both as to real property taxation and as to personal property taxation, and that remedies prescribed under the section are to be fashioned and applied so as to correct inequities in both categories." Id. at 129. The court's language later in its opinion makes it clear that had the state met its burden by producing evidence showing the assessment ratio for other personal property and the respective amounts of real and personal property held by the railroads, equalization would have been necessary only as between like categories of property (i.e., real to real, and personal to personal):
 
 
 19
 Even if we assume that the record sufficed to permit a finding that all personal property, whoever the owner, was assessed at 100 percent of market value and [therefore] that railroad personalty had not been treated in a discriminatory fashion, nevertheless there was literally no evidence in the record to show a breakdown by percentage for the railroads ... of the respective worths of their real and personal property holdings. Without that crucial evidence, the district court was incapable of determining that proportion representing real property to which the 72 percent figure should be applied and that portion to which a higher ratio developed for personal property should be applied....
 
 
 20
 ....
 
 
 21
 On the basis of that failure of proof ... we affirm the decision of the district court.... To the extent that the opinion of the district judge suggests that reliance should ... be placed solely upon percentages derived from sales-assessment ratio studies of real estate to the exclusion of a similar inquiry into personal property ... we do not approve what the district judge had to say. The statute makes clear that personal property, as well as real estate, is to be dealt with in the course of achieving equality and thereby eliminating discrimination. We affirm the result reached in the district court on the quite different ground that the proof of the state failed as to the necessary data relevant to personal property. We do not accept the proposition that only proof as to real estate discrepancies was to be obtained, and then applied indiscriminately to both personal property and real property....
 
 
 22
 Id. at 132-33.
 
 
 23
 The court also stated that, despite proof of discrimination against railroads as to real property, the state still could show "that the discrimination is lesser or non-existent for personal property." Id. at 133. The court's language clearly supports the proposition that personal property and real property may be considered separately in determining whether discrimination against motor carriers exists, and negates the motor carriers' contention that real and personal property must be considered in the aggregate.
 
 
 24
 The Fourth Circuit reaffirmed this position in Arkansas-Best Freight System, Inc. v. Lynch, 723 F.2d 365 (4th Cir.1983). The court's language is quite instructive.
 
 
 25
 The motor carriers ask us to do exactly what our decision in Clinchfield Railroad forbids. They claim discrimination because their personal property is taxed at a higher effective rate than commercial and industrial real property. Such a disparity is permissible under the statute. The motor carriers do not contend that their personal property is being appraised for taxation at a higher ratio than other commercial and industrial personal property is so appraised. That being the case, there is no discrimination under Sec. 11503a.
 
 
 26
 Id. at 367 (emphasis added).
 
 
 27
 This Court also has recognized by implication that courts properly may compare the assessment ratios of only like categories of property. See Ogilvie v. State Board of Equalization, 657 F.2d 204, 209-10 (8th Cir.), cert. denied, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981) (holding that the railroads' personal property is exempt from taxation since all other commercial and industrial personal property is exempt); cf. Burlington Northern Railroad v. Bair, 766 F.2d 1222, 1224-25 (8th Cir.1985) (analyzing personal and real property separately); accord Arkansas-Best Freight System, Inc. v. Cochran, 546 F.Supp. 904, 909 (M.D.Tenn.1981) (de jure classification distinguishing between real and personal property used to analyze whether motor carriers discriminated against as to either kind of property).
 
 
 28
 Additional support for the proposition that only like categories of property may be compared is found in a recent congressional amendment that prohibits discriminatory state property taxation practices against air carriers. The statute provides that air carrier property may not be assessed at a higher ratio than the assessment ratio of "commercial and industrial property of the same type." See 49 U.S.C. Sec. 1513(d)(1)(A). The legislative history indicates that the purpose of the amendment was to make current law prohibiting property tax discrimination against motor carriers applicable to air carriers. See S.Rep. No. 494, 97th Cong., 2d Sess., reprinted in 1982 U.S.Code Cong. & Ad.News 781, 1188. Thus, it is clear that Congress intended that under the MCA "property of the same type" is to be compared in determining whether a state taxation scheme discriminates against motor carriers.
 
 
 29
 What the motor carriers in essence are seeking is a tax preference over other commercial and industrial property owners in the taxation of their personal property simply because real property owners are receiving a de facto preference over personal property owners. We believe that Congress intended for motor carriers to receive nondiscriminatory tax treatment, not a tax preference. Since other commercial and industrial personal property is assessed at 20% of its true market value--as is the motor carriers' personal property--the motor carriers cannot complain that there is any discrimination against them under Arkansas's property taxation scheme. Where there is absolute parity, there can be no discrimination. We simply do not perceive here any wrong that the MCA was intended to redress.
 
 
 30
 Affirmed.
 
 
 31
 APPENDIX A
 1981 TAX YEAR
 Assessed Market Assessment
 Value Value Ratio (%)
 ------------- -------------- ----------
Real Property 3,338,214,335 24,727,513,593 13.5
Personal Property 1,311,781,119 6,558,905,595 20
Public Utility (-rail) 919,730,633 4,598,653,165 20
Rail 67,085,080 559,042,333 12
 ------------- --------------
Total 5,636,811,167 36,444,114,686
 1981 Overall Assessment Ratio-15.46%
 1982 TAX YEAR
Real Property 4,621,835,910 34,960,937,291 13.22
Personal Property 1,463,538,872 7,317,694,360 20
Public Utility (-rail) 1,098,853,377 5,494,266,885 20
Rail 47,388,080 379,104,640 12.5
 ------------- --------------
Total 7,231,616,139 48,152,003,176
 1982 Overall Assessment Ration-15.01%
 1983 TAX YEAR
Real Property 5,641,197,671 42,671,691,914 13.22
Personal Property 1,570,371,173 7,851,855,865 20
Public Utility (-rail) 1,128,278,654 5,641,393,270 20
Rail 30,047,441 231,134,161 13
 ------------- --------------
Total 8,369,894,939 56,396,075,210
 1983 OVERALL ASSESSMENT RATION-14.84%
 
 
 
 [1]
 The MCA was patterned after and is virtually identical to the Railroad Revitalization and Regulatory Reform Act, 49 U.S.C. Sec. 11503 ("the 4-R Act"), which similarly prohibits property tax discrimination against railroads. We therefore agree with the parties that cases construing the 4-R Act and its legislative history are relevant to an analysis of the MCA
 
 
 [2]
 The motor carriers' property consists almost entirely of "rolling stock" such as trucks and trailers. Roadway Express is the only motor carrier that also owns real property in Arkansas. Supplemental Stipulation paragraphs 1-2, Appendix at 137. See infra note 7
 
 
 [3]
 "Assessment ratio" is a short-hand term used by the parties to refer to the ratio of assessed value to true market value of property. See Clinchfield Railroad v. Lynch, 527 F.Supp. 784, 786 (E.D.N.C.1981), aff'd on other grounds, 700 F.2d 126 (4th Cir.1983). Simply stated, the MCA prohibits higher assessment ratios for motor carrier transportation property than for other commercial and industrial property. In this opinion we will follow the practice of stating assessment ratios in terms of percentages
 
 
 [4]
 Insofar as the motor carriers seek to compel the state tax officials to follow state law, the Eleventh Amendment precludes the federal courts from jurisdiction over the case. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Pennhurst II). Thus, we consider only the motor carriers' federal claim that the State's de facto classification system violates the MCA. In view of our disposition of the statutory issue, we need not decide whether the Eleventh Amendment would preclude retroactive relief in the form of a tax abatement or refund for past tax years (as contrasted with prospective injunctive relief) when a violation of the MCA is established. Cf. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)
 
 
 [5]
 The Arkansas Supreme Court has acknowledged the flaws in the state property taxation scheme. In Arkansas Public Service Commission v. Pulaski County Board of Equalization, 266 Ark. 64, 582 S.W.2d 942 (1979), the court held that under the state constitution the state could not classify property when it resulted in one species of property being taxed on a different basis than another species of property. Id. 582 S.W.2d at 948-50. The court also noted that property was not being assessed at the same valuation, and thus was not "equal and uniform throughout the state." Id. 582 S.W.2d at 945 (holding that state constitution required assessment of property on basis of current market value and ordering statewide reassessment)
 
 
 [6]
 The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas
 
 
 [7]
 The District Court also held that since motor carrier real property was assessed at the same level as all other real property in Arkansas in each tax year, there was no discrimination against motor carriers in regard to their real property. The motor carriers have not appealed this aspect of the decision below
 
 
 [8]
 The court explained how the formula works as follows:
 That method would require the court first to figure the total assessed value of locally-assessed commercial and industrial real property, locally-assessed commercial and industrial personal property, and state-assessed public utility property; then to figure the total true market value of those three kinds of property; and finally to determine the ratio of the total assessed value to the total true market value.
 ... When, as here, categories of property that are subject to different methods of appraisal must be factored together to produce the assessment ratio for "all other commercial and industrial property," each category should be factored in proportion to its share of the total true market value of all such property.
 Lennen, 732 F.2d at 1504-05.