663 F.2d 1036
 ALABAMA GREAT SOUTHERN RAILROAD COMPANY; Central of Georgia
Railroad Company; Southern Railway Company; Tennessee,
Alabama & Georgia Railroad Company; and Woodstock & Blocton
Railway Company, Plaintiffs-Appellants,
v.
Ralph P. EAGERTON, Jr., etc. and S. L. Evans, etc.,
Defendants-Appellees.
 No. 80-9048.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 14, 1981.
 
 Rushton, Stakely, Johnston & Garrett, Charles E. Porter, Montgomery, Ala., Everett B. Gibson, Memphis, Tenn., for plaintiffs-appellants.
 Ronald J. Bowden, Asst. Counsel, Montgomery, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before TUTTLE, HENDERSON and HATCHETT, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 The five railroad companies here appeal from the district court's denial of injunctive and declaratory relief from the collection by the state of Alabama of its railroad license tax, 501 F.Supp. 1044 (M.D.Ala.1980). The appellants assert that the collection of this license tax is prohibited by subsection 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976 (hereinafter the "Act"). Jurisdiction was predicated on subsection 306(2) of the Act which grants jurisdiction to the federal district courts over cases involving alleged violations of the substantive provisions of § 306, notwithstanding the Federal Antitax Injunction Act, 28 U.S.C. § 1341 (1976).
 
 
 2
 The following facts, relevant to our consideration of the issues raised on appeal have been stipulated by the parties:
 
 
 3
 1. (Appellants, Alabama Great Southern R.R., Central of Georgia R.R., Southern Railway, Tennessee, Alabama and Georgia R.R., and Woodstock and Blocton Railway, are all) subject to regulation by the Interstate Commerce Commission and are engaged in interstate commerce in and through the State of Alabama.
 
 
 4
 (2-4. Appellees, Eagerton and Evans, are the Commissioner and the Assistant Commissioner of Revenue of the State of Alabama. They exercise all power over the Revenue Department and supervise the collection of the railroad tax.)
 
 
 5
 5. The plaintiffs are subject to the Alabama railroad license tax; in 1979, plaintiff Southern Railway Company, paid the Alabama railroad license tax in the amount of $566,146.00. For the fiscal year ending September 30, 1979, the State of Alabama collected $1,203,143.00 under the Alabama railroad license tax.
 
 
 6
 6. 49 U.S.C. § 11503 is an official revision and codification of Pub.L.No.94-210, Section 306, 90 Stat. 54 (February 5, 1976), which was originally enacted as part of the Railroad Revitalization and Regulatory Reform Act of 1976 and codified unofficially as 49 U.S.C.A. § 26c (1978 Supp.). 49 U.S.C. § 11503 was published as part of Pub.L.No.95-473, 92 Stat. 1337 (October 13, 1978), which was "an act to revise, codify and enact without substantive change the Interstate Commerce Act and related laws as Subtitle IV, Title 49, United States Code, 'Transportation'." Pursuant to Pub.L.No.95-473, 92 Stat. 1466, § 3(a), the statutory language of 49 U.S.C. § 11503 cannot be construed as making a substantive change in section 306. Accordingly, the language of Section 306 is applicable to, and will be employed in, this proceeding.
 
 
 7
 7. Each of the Plaintiffs pays annually to the State of Alabama the following taxes: state ad valorem taxes imposed by § 40-7-1, Code of Alabama 1975; state income taxes imposed by § 40-18-2, Code of Alabama 1975; and sales and use taxes imposed by §§ 40-23-2 through 40-23-61, Code of Alabama 1975. As corporations doing business in Alabama, each of the Plaintiffs pays annually to the State of Alabama corporate franchise taxes imposed by § 40-14-41, Code of Alabama 1975. For 1979, Plaintiff, Southern Railway Company, paid these taxes in the following approximate amounts:
 
 
 8
 State ad valorem taxes $ 185,250.00
Local ad valorem taxes $ 846,000.00
State income taxes $ 244,000.00
Sales and use taxes $1,854,000.00
Corporate franchise taxes $ 427,500.00
 
 
 9
 The stipulation also agreed that somewhat similar license taxes were levied against other regulated public utility companies.
 
 I. STATEMENT OF ISSUES
 
 10
 (1) Whether the phrase "any other tax" contained in subsection 306(1)(d) prohibits all forms of state taxation which result in discriminatory treatment of common carrier by railroad, or only state taxes that discriminate against rail transportation property.
 
 
 11
 (2) Whether the Alabama railroad license tax results in discriminatory treatment of common carriers by railroad within the meaning of subsection 306(1)(d).
 
 II. RELEVANT STATUTES
 
 12
 The only statutes involved in this case are section 306 of the Act and section 40-21-57 of the Alabama Code.
 
 
 13
 Section 306 of the Act provides in pertinent part:
 
 
 14
 (1) Notwithstanding the provisions of section 202(b) any action described in this subsection is declared to constitute an unreasonable and unjust discrimination against, and an undue burden on, interstate commerce. It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts:
 
 
 15
 (a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described), for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.
 
 
 16
 (b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).
 
 
 17
 (c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.
 
 
 18
 (d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this chapter.
 
 
 19
 Pub.L.No.94-210, § 306, 90 Stat. 54 (Feb. 5, 1976). See Stipulation No. 6, supra (emphasis added).
 
 
 20
 The Alabama railroad license statute levies a "license or privilege tax upon each person engaged in the business of operating a railroad in ... Alabama ... in a sum equal to (21/2%) of the gross receipts in excess of $150,000 of such railroad from all intrastate business of such railroad within ... Alabama during the preceding year." Ala.Code § 40-21-57 (1975).
 
 III. DISTRICT COURT'S OPINION
 
 21
 After reviewing the statute, the legislative history and Ogilvie v. State Board of Equalization, 492 F.Supp. 446 (1980) (discussed below), the district court held that subsection 306(1)(d) prohibits only the imposition of discriminatory state property taxes and does not apply to the licensing tax at issue. Accordingly, the court did not reach the issue of whether the licensing tax discriminated against the railroads.
 
 
 22
 IV. ISSUE 1-WHETHER SUBSECTION 306(1)(d) APPLIES TO LICENSING TAXES
 
 
 23
 (A) Appellants' Arguments
 
 
 24
 Appellants argue that subsection 306(1)(d) prohibits the imposition of all forms of state taxation which discriminate against common carriers by railroads. They rely in part on the general policy underlying the passage of the Act-Congress' concern for the survival of the railroad industry. To this end, Congress sought to eliminate discriminatory state taxation which constitutes a burden on interstate commerce. Because the Act is remedial in nature, the appellants assert, it should be interpreted broadly to prohibit all discriminatory state tax practices. If subsection 306(1)(d) were interpreted to apply only to property taxes, the policy of revitalizing the railroads and preventing discriminatory state taxation would be frustrated.
 
 
 25
 The appellants argue that the meaning of the language "any other tax" contained in subsection 306(1)(d) is clear and unambiguous and therefore this language should be construed literally. Where statutory language is clear and unambiguous, it is not necessary to resort to legislative history. Globe Seaways, Inc. v. Panama Canal Co., 509 F.2d 969 (5th Cir. 1975).
 
 
 26
 In support of their argument for literal interpretation, the appellants cite Gordon v. Appeal Tax Court, 44 U.S. (3 How.) 132, 11 L.Ed. 529 (1845). In Gordon, the Supreme Court interpreted the words "any further tax" in a state tax exemption statute. This statute provided that if banks agreed to make certain annual contributions, the state would not impose "any further tax" on the banks during the continuance of their charters. The Supreme Court held that this language prohibited not only additional taxation on the franchises of the banks but property taxes on all stocks or shares in the bank as well. In interpreting the statute, the Court noted that "the words 'any further tax' ..., will, by common consent ... be intended to mean any additional tax besides that referred to, and not any further like tax." Id. at 147. The appellants urge that this type of common sense construction should be applied to the words "any other tax" as used in subsection 306(1)(d).
 
 
 27
 The appellants also note that the subject of protection in subsections 306(1) (a)-(c) is "rail transportation property" while the subject of protection in subsection 306(1)(d) is "a common carrier by railroad." Therefore, the appellants argue, subsection 306(1)(d) clearly applies to all forms of taxation against rail carriers and is not limited to taxation on railroad property.
 
 
 28
 The appellants then assert that the district court erroneously relied on several factors in denying relief. First, the title of subsection 306, "Tax discrimination against rail transportation property," should not be relied upon to determine the scope of subsection 306(1)(d). Railroad Trainmen v. Baltimore & O.R.R., 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947).
 
 
 29
 Second, the appellants object to the reliance on legislative history. Appellants point out that the initial bills in Congress were expressly limited to railroad property taxes. They note that none of these early versions of the bills contained a subsection 306(1)(d). Since subsection 306(1)(d) was added later as a catchall provision, appellants assert that the earlier legislative history is irrelevant. In particular, they say the district court erroneously emphasized specific language from an excerpt of the Act's legislative history which reads:
 
 
 30
 The conference substitute follows the Senate bill except that the conferees delete the provision making this section inapplicable to any State which had, on the date of enactment, a constitutional provision for the reasonable classification of property for State purposes and limited the provision to taxation of railroad property.
 
 
 31
 S.Rep.No.94-595, 94th Cong., 2d Sess. 166, reprinted in (1976) U.S.Code Cong. & Admin.News, pp. 14, 181 (emphasis added.) Appellants argue that the above emphasized language refers to the type of interstate carrier entitled to protection under subsection 306(1)(d) and not to the type of discriminatory state tax that is prohibited. The conference committee limited the scope of section 306 to railroads by rejecting that portion of the Senate bill which would have made section 306 applicable to all carriers regulated by the I.C.C., including, for example, trucklines.
 
 
 32
 Third, the appellants argue that the Court's reliance on Ogilvie v. State Board of Equalization, supra, was misplaced. In Ogilvie the court held that subsection 306(1)(d) prohibits the assessment of state ad valorem taxes against railroad personal property (as opposed to railroad operating property) where the personal property of locally-assessed businesses was exempt. The appellants contend that the holding in Ogilvie that subsection 306(1)(d) applies to property taxes does not mean that subsection 306(1)(d) is limited to property taxes.
 
 
 33
 (B) Appellees' Arguments
 
 
 34
 Appellees argue that the language of subsection 306(1)(d), when read in conjunction with the rest of subsection 306(1) which refers only to property taxes, supports the conclusion that the subsection is limited to property taxation. The appellees argue, however, that the language is ambiguous. The appellants assert that if Congress had intended to limit the statute they could have used the words "any other property tax." By the same token, appellees argue that if Congress had intended subsection 306(1)(d) to cover all forms of taxation, they could have used the words "any taxes other than property taxes."
 
 
 35
 The appellees contend that the Gordon case, supra, which construed literally the term "any further tax," is not controlling. They attempt to distinguish it on several grounds. First, the Court in Gordon was not interpreting a statute which dealt exclusively with property taxes. Second, the Court did not have before it legislative history indicating that Congress was concerned only about property taxes. Finally, the tax statute in Gordon was enacted as a quid pro quo in exchange for the bank's pledge of financial assistance.
 
 
 36
 Appellees contend that the district court's interpretation of subsection 306(1)(d) is consistent with established principles of statutory construction, including the doctrine of ejusdem generis. This doctrine provides that words such as "any other" which follow the enumeration of particular classes of things, must be read as meaning "other such like" and therefore include only things of like kind and character as those enumerated. City of Lexington v. Edgerton, 289 Ky. 815, 159 S.W.2d 1015 (1941); Bigger v. Unemployment Compensation Comm'n, 43 Del. 274, 46 A.2d 137 (1946).
 
 
 37
 While appellees admit that the title of an Act cannot control its construction, they assert that the title may serve as an aid to construction of ambiguous language. Donovan v. State, 359 So.2d 1181 (Ala.Cr.App.1978).
 
 
 38
 This language of subsection 306(1)(d) which refers to the rail carrier itself, rather than the rail carrier property, as the subject of protection is not significant according to the appellees, who argue that the subject of protection does not define the type of protection afforded by the Act.
 
 
 39
 Since the use of the term "any other tax" in the context of a statute otherwise limited to property taxation is claimed to be ambiguous, the appellees argue that it is necessary to look beyond the literal meaning to the legislative history of the Act. Smither & Co. v. Coles, 242 F.2d 220, (D.C.Cir.), cert. denied, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1129 (1978).
 
 
 40
 Appellees contend that the legislative history of the Act clearly indicates that subsection 306(1)(d) is limited to property taxation. The legislative history contains no reference to any kind of taxes other than property taxes. The appellees argue that a fair reading of the excerpt from Senate Report No. 94-595, supra, reveals that the conference bill limited both the type of carrier protected and the type of tax prohibited by section 306. Appellees also rely on Senate Report No. 91-630, 91st Cong., 1st Sess. (1969) and Senate Report No. 92-1085, 92d Cong., 2d Sess. (1972), both of which indicate that the purpose of section 306 was to eliminate the burden on interstate commerce resulting from discriminatory state taxation of common carrier transportation property. The appellees argue that an interpretation of subsection 306(1)(d) which prohibits only all forms of property taxes would implement, not frustrate, the purposes of Congress in enacting this legislation.
 
 
 41
 (C) Discussion
 
 
 42
 It would be difficult to imagine statutory language that would be less needful of construction than the "any other" language used here. Following three subparagraphs, (a), (b) and (c) dealing with taxation of "transportation property," paragraph (d) then forbids "the imposition of any other tax which results in discriminatory treatment of a common carrier by railroad." Without invoking any of the ordinary rules of construction, it would appear that paragraph (d) is indeed intended as a catchall provision to prevent discriminatory taxation of a railroad carrier by any means. This view is greatly strengthened when we consider the avowed purpose of the Act which has been clearly set forth by the Court of Appeals for the Eighth Circuit which has now affirmed the Ogilvie case:
 
 
 43
 As noted in our review of the history of this section, its purpose was to prevent tax discrimination against railroads in any form whatsoever.
 
 
 44
 Ogilvie v. State Board of Equalization, 657 F.2d 204, 210 (8th Cir. 1981). Until this law was passed, as pointed out by the appellants, states could constitutionally classify railroads differently from all other taxpayers for the imposition of state taxes without violating the equal protection clause of the Fourteenth Amendment. It was the obvious purpose of Congress to put an end to this practice, where such treatment of the railroads as a class was discriminatory in effect.
 
 
 45
 Even if we were to consider the rules of construction, we would be unconvinced that the ejusdem generis doctrine would apply to this statute. The Supreme Court made that clear in the Gordon case, supra, where the Court said: "The words 'any further tax' ... will, by common consent ... be intended to mean any additional tax besides that referred to, and not any further like tax." 44 U.S. at 147. Moreover, it appears that the Court of Appeals for the Eighth Circuit in affirming the district court judgment in Ogilvie holding illegal a state tax on the personal property of a railroad company when personal property was not taxed for industrial and commercial companies, itself rejected the doctrine ejusdem generis. There, the Court held that subsection 306(1)(d), the "any other tax" provision, applied to an attempt by the state to levy a tax on personal property, whereas the previous paragraphs all dealt with "transportation property." Thus, the Court did not, as contended for by the state of North Dakota, restrict the term "any other tax" to the same kind of tax referred to in the previous three paragraphs.
 
 
 46
 Finally, the legislative history seems to us to cut the other way from that urged by the state of Alabama. The earlier bills did not contain anything like subsection (d). They were primarily concerned with an important existing discrimination in property taxes. Then, as stated by the appellee in its brief here: "Section 11503(b)(4) (correctly stated it should be section 306(1)(d)) does not appear to have been included in any of the debates. Instead, it seems to have been added at the last minute almost as an afterthought." Of course, such debates as were had on the bill, under such circumstances, usually included the words "property" or "transportation property." But, towards the end of the debate, it must have become plain to Congress that a mere prohibition against discriminatory property taxes would be without effect if a state were to be permitted to enact any other discriminatory tax, so long as it was not a property tax. The appellees would have us ignore subparagraph (d) because they do not understand why Congress added it "almost as an afterthought." We cannot give such cavalier treatment to a formal act of Congress, or a part of it that seems clearly within the purpose and intendment of the law.
 
 
 47
 We conclude that the franchise tax on these railroads measured by the gross receipts from their intrastate business falls within the definition of "any other tax" prohibited under subsection 306(1)(d), if it results in discriminatory treatment of the carriers.
 
 
 48
 V. ISSUE II-WHETHER THIS TAX RESULTS IN DISCRIMINATION
 
 AGAINST RAILROADS
 
 49
 Because the trial court found that this was not such a tax, it did not reach the question whether the tax was discriminatory. That issue, therefore, remains for resolution in the first instance by the trial court. We do not express an opinion on the question whether payment by one or more of these appellants of some $500,000 in franchise taxes as compared with a $500 franchise tax by a commercial or industrial business would of itself prove the discrimination referred to in the statute. We think this is a matter that should initially be presented to the trial court for its determination. In making such determination, the court should consider whether it would be appropriate for it to consider the entire tax structure as applied against railroads and as applied against "all other commercial and industrial businesses by the state of Alabama."
 
 
 50
 The judgment is REVERSED and the case is REMANDED to the trial court for further proceedings not inconsistent with this opinion.