762 F.2d 375
 RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD COMPANY, Appellant,
v.
DEPARTMENT OF TAXATION, COMMONWEALTH OF VIRGINIA, Appellee.
Association of American Railroads, Amicus Curiae.
 No. 84-1774.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 4, 1985.
Decided May 22, 1985.
 
 William L.S. Rowe, Richmond, Va. (Douglas W. Davis, Thomas McN. Millhiser, Hunton & Williams, Urchie B. Ellis, Vice President-Law, Richmond, Va., on brief), for appellant.
 Barbara M. Rose, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Va., Kenneth W. Thorson, Sr. Asst. Atty. Gen., Richmond, Va., on brief), for appellee.
 (James W. McBride, Gregory G. Fletcher, Marion F. White, Laughlin, Halle, Clark, Gibson & McBride, Memphis, Tenn., on brief), for amicus curiae.
 Before SPROUSE and CHAPMAN, Circuit Judges and KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 Plaintiff Richmond, Fredericksburg & Potomac Railroad Company (RF & P) brought this action against defendant Department of Taxation, Commonwealth of Virginia (the Department), alleging that its application of the Virginia corporate net income tax discriminates against railroads in violation of Sec. 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94-210, 90 Stat. 54 (1976), recodified at 49 U.S.C. Sec. 11503 (1982) (the 4-R Act). The district court granted judgment on the pleadings and summary judgment in favor of the Department and RF & P appealed. The district court held that Sec. 306(1)(d) of the 4-R Act does not apply to allegedly discriminatory state net income taxes, the Virginia net income tax, as applied, does not discriminate against railroads, and Sec. 306(2) does not authorize retroactive refund relief. Richmond, Fredericksburg & Potomac R.R. v. Department of Taxation, 591 F.Supp. 209 (E.D.Va.1984). We hold that Sec. 306(1)(d) does apply to discriminatory state net income taxes but that the Virginia net income tax, as applied, does not discriminate against railroads.[1] Accordingly, we reverse in part and affirm in part.
 
 
 2
 * A. Background[2]
 
 
 3
 Virginia imposes a corporate net income tax on railroads and other commercial and industrial corporations. Va.Code Secs. 58-151.032, 58-151.032:1, and 58-151.032:2 (1974 & 1983). The Virginia taxable income for a tax year is based on the corporation's federal taxable income for the tax year subject to certain adjustments set forth in the Virginia Code.
 
 
 4
 From January 1, 1903, to December 31, 1978, RF & P and other railroads in Virginia were subject to a franchise tax measured by gross transportation receipts. Va.Code Sec. 58-519 (1974). RF & P and other railroads were not subject to the Virginia net income tax and their income from sources other than transportation receipts was not taxed. Thus, the gain railroads realized from the sale or exchange of both depreciable and nondepreciable assets was not taxed and, unlike other commercial and industrial taxpayers, railroads were permitted no deductions for losses, expenses or depreciation.
 
 
 5
 During this time other industrial and commercial taxpayers in Virginia were subject to a net income tax. Under the Virginia net income tax as enacted for taxable years prior to 1972, gains or losses from the sale or exchange of property were taken into account in determining the net income subject to tax. A reasonable allowance (depreciation) was allowed for exhaustion, wear and tear of property used in a trade or business or property held for the production of income. See Va.Code Sec. 58-81(i) (1959) (repealed by 1971 Va.Acts, Ex.Sess., ch. 171). For Virginia income tax purposes, a corporate taxpayer had the option of calculating depreciation on a straight-line method or the method by which it calculated depreciation for federal income tax purposes. The additional twenty percent first-year bonus depreciation under federal law was not allowed for Virginia tax purposes. See I.R.C. Sec. 179 (1982). Thus, the depreciation deduction on depreciable assets for Virginia income tax purposes could have been smaller than the corresponding federal deduction. As a result, a corporation would have had slightly higher Virginia taxable income but an asset would have a slightly higher Virginia adjusted basis. Accordingly, when an asset was sold a corporation's Virginia taxable income would be slightly lower than its federal taxable income because of the higher Virginia basis, assuming a gain.
 
 
 6
 In 1971 Virginia amended its income tax laws to conform to federal law effective for taxable years beginning in 1972. 1971 Va.Acts, Ex.Sess., ch. 171 (the Conformity Act). "Federal taxable income" for corporations became the starting point for determining "Virginia taxable income." This conformity tax structure also contained certain transitional modifications. One of those transitional modifications, Sec. 58-151.0111(h) (repealed as obsolete by 1981 Va.Acts, ch. 402), allowed taxpayers to reduce their 1971 Virginia taxable income by:
 
 
 7
 [T]hat amount, if any, by which the adjusted basis of depreciable property determined for Virginia income tax purposes ... exceeds the adjusted basis for the same property for federal income tax purposes determined at the close of the same period.
 
 
 8
 This "Extra Depreciation Deduction" permitted such a large deduction that in 1974 the Virginia General Assembly amended Sec. 58-151.0111(h) to allow a three-year carry-over of any unused portion.
 
 
 9
 The Extra Depreciation Deduction was designed to bring the Virginia "adjusted basis" of a taxpayer's depreciable property "determined for Virginia income tax purposes" into line with the adjusted basis of those assets for federal tax purposes. Differences in the two bases existed, for example, because taxpayers could have used the straight-line method of calculating depreciation for Virginia income tax purposes while using an accelerated calculation for federal tax purposes.
 
 
 10
 In 1978 railroads in Virginia were made subject to the Virginia net income tax and relieved of the franchise tax on gross transportation receipts for taxable years beginning in 1979. 1978 Va.Acts, ch. 784. Accordingly, "federal taxable income" became the starting point for determining "Virginia taxable income" for RF & P and the other railroads. Although Railroads also became subject to certain transitional modifications similar to those enacted in 1972 under the Conformity Act, these transitional modifications did not include an adjustment to the basis of depreciable assets similar to the Extra Depreciation Deduction. Compare Va.Code Sec. 58-151.0111(h) (1974) with Sec. 58-151.03:2 (1983).
 
 B. The 4-R Act
 
 11
 In 1976 Congress passed the Railroad Revitalization and Regulatory Reform Act effective February 5, 1979. Pub.L. No. 94-210, 90 Stat. 54 (1976). In 1978 Sec. 306 of the 4-R Act was recodified as part of the Revised Interstate Commerce Act, 49 U.S.C. Sec. 11503 (1982). See Pub.L. No. 95-473, 92 Stat. 1466 (1978). Although the recodification was not intended to effect any substantive change in the meaning of the 4-R Act, the language of the recodification differs significantly from the language of Sec. 306. This court has held previously that the language of Sec. 306 must be used for purposes of statutory analysis. Clinchfield R.R. v. Lynch, 700 F.2d 126, 128-29 n. 1 (4th Cir.1983).
 
 
 12
 Section 306 of the 4-R Act expressly declares that discriminatory state taxation of railroads constitutes an unreasonable and unjust discrimination against, and an undue burden upon, interstate commerce. Section 306(1) forbids a state, subdivision of a state, or any authority acting for a state or subdivision from:
 
 
 13
 (a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described), for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.
 
 
 14
 (b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).
 
 
 15
 (c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.
 
 
 16
 (d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.
 
 
 17
 Pub.L. No. 94-210, 90 Stat. 54 (1976) (emphasis added).
 
 C. RF & P's Tax Returns
 
 18
 On its 1979 and 1980 Virginia income tax returns, RF & P claimed that it should not be taxed on gain realized on sales of nondepreciable property in 1979 and 1980 to the extent that the gain was attributable to increases in the value of that property prior to 1979 when it became subject to the net income tax. Therefore, RF & P deducted from its Virginia taxable income that portion of the gain from the sale or exchanges of nondepreciable property determined by multiplying the total gain by a fraction, the denominator of which was the total holding period of the property by RF & P and the numerator of which was the holding period of the property prior to 1979.
 
 
 19
 RF & P also claimed on its 1979 and 1980 Virginia income tax returns that it should not be taxed on gain realized from the sale of depreciable property to the extent that the gain was attributable to federal tax depreciation allowed or allowable prior to 1979. None of this depreciation had been allowed or allowable to RF & P as a deduction for Virginia tax purposes. Thus, RF & P deducted from its Virginia taxable income federal tax depreciation allowed or allowable prior to 1979 on depreciable property that it sold or exchanged in 1979 or 1980.
 
 
 20
 The Department denied the adjustments for nondepreciable and depreciable property and assessed additional taxes against RF & P. RF & P then filed an administrative appeal contesting these assessments on the ground that they violated Sec. 306 of the 4-R Act. RF & P also filed an amended Virginia income tax return for 1979 claiming an Extra Depreciation Deduction for its depreciable property owned on December 31, 1978. The amount of the deduction equaled the amount of depreciation claimed by RF & P for the property on its federal income tax returns prior to 1979, but only to the extent that this amount did not exceed the income otherwise taxable in 1979 for Virginia income tax purposes. This Extra Depreciation Deduction resulted in a refund claim of $1,066,475. The Department denied the Extra Depreciation Deduction claimed on RF & P's amended return and reaffirmed the disallowance of the nondepreciable property and depreciable property adjustments. RF & P then brought this action against the Department.
 
 II
 
 21
 The first issue on appeal concerns the scope of Sec. 306(1)(d) of the 4-R Act. Section 306(1)(d) prohibits "[t]he imposition of any other tax which results in discriminatory treatment of a common carrier by railroad ..." (emphasis added). The district court interpreted the phrase "any other tax" to include only state and local property taxes and any other taxes enacted in lieu of a discriminatory property tax prohibited by Sec. 306(1)(a) through (c). The district court reached this limited interpretation of Sec. 306(1)(d) based upon its analysis of the legislative history behind Sec. 306, the overall structure and content of Sec. 306, and the principles of comity embodied in the Tax Anti-Injunction Act, 28 U.S.C. Sec. 1341 (1982). Thus, based on this interpretation the district court held that Sec. 306(1)(d) does not apply to allegedly discriminatory state net income taxes.
 
 
 22
 The federal and state courts uniformly have held that the "any other tax" language in Sec. 306(1)(d) is not limited to property taxes and other taxes imposed in lieu of the discriminatory property taxes prohibited by Sec. 306(1)(a) through (c). Alabama Great Southern R.R. v. Eagerton, 663 F.2d 1036 (11th Cir.1981) (Alabama franchise tax on railroads measured by the gross receipts from their intrastate business); Kansas City Southern Railway v. McNamara, 563 F.Supp. 199 (M.D.La.1983) (Louisiana gross receipts tax levied upon public utilities, including railroads); Atchison, Topeka & Santa Fe Railway v. Bair, 535 F.Supp. 68 (S.D.Iowa 1982) (Iowa special excise tax on railroads measured by the amount of fuel consumed to propel railway vehicles in the state); Atchison, Topeka & Santa Fe Railway v. Bair, 338 N.W.2d 338 (Iowa 1983), cert. denied, --- U.S. ----, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984) (Same). Similarly, the Eighth Circuit has suggested that it would follow the same approach. See Ogilvie v. State Board of Equalization, 657 F.2d 204, 210 (8th Cir.1981), cert. denied, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981) (purpose of Sec. 306 "was to prevent tax discrimination against railroads in any form whatsoever"); Trailer Train Co. v. State Board of Equalization, 710 F.2d 468, 472 n. 6 (8th Cir.1983) (Congress most likely intended "to broaden, not narrow, the scope of [Sec. 306] by making it applicable to all forms of state taxation rather than just property taxation"). The district court rejected this overwhelmingly contrary precedent as based upon a misreading or a nonreading of the legislative history.
 
 
 23
 We agree with the Eleventh Circuit that "[i]t would be difficult to imagine statutory language that would be less needful of construction than the 'any other' language used [in Sec. 306(1)(d) ]." Eagerton, 663 F.2d at 1040. Unlike subsections (a), (b), and (c) which deal with taxation of "transportation property," subsection (d) forbids "the imposition of any other tax which results in discriminatory treatment of a common carrier by railroad." (emphasis added). Thus, even without invoking any of the ordinary rules of statutory construction, we conclude that subsection (d) was intended as a catchall provision designed to prevent discriminatory taxation of a railroad carrier by any means. This view is consistent with the purpose of the 4-R Act which was "to prevent tax discrimination against railroads in any form whatsoever." Ogilvie, 657 F.2d at 210; Clinchfield R.R. v. Lynch, 700 F.2d at 128-29 n. 1, 134 (Sec. 306 is remedial legislation designed to eliminate discriminatory state tax practices that unreasonably burden interstate commerce). Accordingly, a journey into the jungle of legislative history is unnecessary because we hold that Sec. 306(1)(d), on its face, clearly and unambiguously prohibits all forms of discriminatory taxation of railroads.
 
 
 24
 In any event, however, the legislative history of the 4-R Act does not support a more limited construction of Sec. 306(1)(d) because nothing in the committee reports, debates, or other legislative history focuses specifically on the purpose of Sec. 306(1)(d).[3] It is entirely reasonable to conclude that the legislative history is silent as to the purpose of Sec. 306(1)(d) because that subsection, inserted three weeks before the statute's passage, represented a last minute realization by Congress that prohibiting only discriminatory property taxes would not be enough relief. Both the Eleventh Circuit in Eagerton, 663 F.2d at 1041, and the Iowa Supreme Court in Bair, 338 N.W.2d at 343-46, reached this conclusion. Thus, the Virginia net income tax falls within the definition of "any other tax" prohibited by Sec. 306(1)(d), if it results in the discriminatory treatment of RF & P.
 
 III
 
 25
 The second issue presented is whether the application of the Virginia corporate net income tax has discriminated against RF & P in violation of Sec. 306(1)(d). In determining whether the Virginia corporate net income tax discriminated[4] against railroads, qua railroads, the district court compared railroads with that class of taxpayers which were newcomers to the corporate net income tax structure: corporations recently organized or foreign corporations moving to Virginia for the first time. The district court concluded that railroads must be compared with this class of taxpayers because, unlike other commercial and industrial taxpayers, railroads were not previously subject to the old Virginia net income tax structure. The district court found that railroads and other corporate newcomers to the Virginia corporate net income tax structure must simply take Virginia's tax structure, conformity and all, as they find it.
 
 
 26
 After comparing Virginia's tax treatment of railroads with its tax treatment of other similarly situated taxpayers, the district court concluded that the Virginia corporate net income tax did not discriminate against RF & P in violation of Sec. 306(1)(d). With respect to depreciable property, the district court found that the Conformity Act granted neither class of taxpayers the Extra Depreciation Deduction permitted other commercial and industrial taxpayers. Similarly, with respect to nondepreciable property, the district court found that gain from the sale or exchange of property is taxed only when the gain is realized, not as it accrues, and that the gain is only realized when it is sold or exchanged. Accordingly, the district court found no discrimination in Virginia's practice of taxing all of the gain realized on RF & P's sale or exchange of nondepreciable property, even though a portion of the gain accrued prior to 1979 when RF & P was not subject to the Virginia corporate net income tax.
 
 
 27
 RF & P argues that the district court erred in this conclusion because the district court compared railroads with the wrong class of taxpayers. According to RF & P, railroads should be compared to all other commercial and industrial taxpayers because, unlike other corporate newcomers to the Virginia corporate net income tax, railroads were previously subject to a franchise tax measured by gross transportation receipts. RF & P argues that when compared with all other commercial and industrial taxpayers, the Virginia corporate net income tax discriminates (as measured by its dollars and cents impact) against railroads as a class because the Conformity Act granted the other commercial and industrial taxpayers an Extra Depreciation Deduction but denied that deduction to railroads. Finally, RF & P contends that the Virginia corporate net income tax discriminates against railroads with respect to nondepreciable property because had RF & P sold its nondepreciable property under Virginia's gross transportation receipts tax, the gain realized on the sale of that property would not have been taxed.
 
 
 28
 The Virginia corporate net income tax does not discriminate against railroads in violation of Sec. 306(1)(d) with respect to their depreciable property. To argue that the railroads are entitled to some equivalent of the Extra Depreciation Deduction on their depreciable property is to argue that the railroads were situated similarly to those commercial and industrial taxpayers who were brought into conformity with the federal income tax structure in 1972. This simply is not the case. In 1972 the railroads were not paying Virginia income tax. As the district court noted, "the Extra Depreciation Deduction was designed for corporate taxpayers moving from one income taxation scheme to another income tax scheme, not from a non income income tax scheme into an income tax scheme for the first time." 591 F.Supp. at 226 (emphasis in original). The Extra Depreciation Deduction had no relevance to railroads in Virginia because prior to January 1, 1979, railroads had no Virginia income tax basis in their depreciable property.
 
 
 29
 Furthermore, the Virginia corporate net income tax does not discriminate against railroads with respect to their nondepreciable property. It is axiomatic in income tax law that gain is not taxed until realized. Simply because prior to 1979 railroads were not under the Virginia corporate net income tax scheme (and thus any "gain" from the sale of an asset was nontaxable) gives them no logical reason for arguing that the increase in value of that property up to 1979 should somehow be exempt from Virginia income tax. No such deduction is provided by Virginia's income tax law to any other corporation newly coming under Virginia's corporate income tax.
 
 
 30
 Accordingly, the decision of the district court is
 
 
 31
 REVERSED IN PART.
 
 
 32
 AFFIRMED IN PART.
 
 
 
 [1]
 Because we hold that the Virginia net income tax, as applied, does not discriminate against railroads in violation of Sec. 306(1)(d) of the 4-R Act, we need not consider whether Sec. 306(2) authorizes or permits federal courts to order retroactive refund relief
 
 
 [2]
 The parties have stipulated to the facts
 
 
 [3]
 The district court cited two committee reports and a Conference Committee Report as illustrating Congress' intent that Sec. 306(1)(d) be limited in scope. The two committee reports referred to a House Amendment which contained an "any other tax" clause and stated that this provision would prohibit "the imposition of a discriminatory 'in lieu tax' ". S.Rep. No. 94-585, 94th Cong., 1st Sess. 139 (1975); H.R.Rep. No. 94-725, 94th Cong., 1st Sess. 77 (1975). The Conference Committee Report described the second conference substitute as following the Senate bill "except ... limited the provision to taxation of railroad property." S.Rep. No. 94-595, 94th Cong. 2d Sess. 165-66 (1976), reprinted in [1976] U.S.Code Cong. & Ad.News 14, 148, 180-181; S.Rep. No. 94-585, 94th Cong., 1st Sess. 138-39 (1975) (emphasis added)
 We are unconvinced that these pieces of legislative history indicate a congressional intent to limit the scope of Sec. 306(1)(d). First, the two committee reports discussing an "in lieu tax" provision referred only to a House Amendment which was never passed into law. See Rep. No. 94-595, 94th Cong., 2d Sess. 166 (1976), reprinted in [1976] U.S.Code Cong. & Ad.News 148, 181. Second, the Conference Committee Report which stated that the second conference committee followed the Senate bill "except ... limited the provision to taxation of railroad property," reflected nothing more than a limitation on the type of taxpayers to be protected (railroads as opposed to "any common or contract carrier subject to the Interstate Commerce Act") and had nothing to do with limiting the type of taxes prohibited by Sec. 306(1)(d).
 
 
 [4]
 Both parties agree that "discrimination" must be given its "ordinary meaning": "[T]o make a distinction in favor of or against a person or thing on the basis of the group, class, or category to which the person or thing belongs, rather than according to actual merit." Random House Dictionary 410 (unabridged ed. 1976). In essence, discrimination is a "failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored." Baker v. California Land Title Co., 349 F.Supp. 235, 238 (C.D.Cal.1972), aff'd, 507 F.2d 895 (9th Cir.1974), cert. denied, 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975)