**DEPARTMENT OF REVENUE, STATE OF FLORIDA, a State Agency and Randy Miller, its Executive Director, Plaintiff-Appellant,**

v.

**TRAILER TRAIN COMPANY, a Delaware corporation, Defendant-Appellee.**

No. 87–3093.

United States Court of Appeals, Eleventh Circuit.

Nov. 2, 1987.

Jeff Kielbasa, Stephen J. Keller, Deputy Chief Counsel, Florida Dept. of Revenue, Tallahassee, Fla., for plaintiff-appellant.

Kenneth R. Hart, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, Fla., James W. McBride, Laughlin, Halle, Gibson & McBride, Washington, D.C., for defendant-appellee.

Before HILL and VANCE, Circuit Judges, and PROPST\*, District Judge.

PROPST, District Judge:

This is an interlocutory appeal, brought pursuant to 28 U.S.C. § 1292(b), from a judgment of the district court granting Trailer Train Company's (Trailer Train) motion for partial summary judgment. Plaintiff-Appellee Trailer Train brought this action pursuant to the Railroad Revitalization and Regulatory Reform Act of 1976 (4 R. Act) (§ 306), seeking a judgment against Defendants-Appellants Department of Revenue, State of Florida and Randy Miller, its executive director (collectively, Department), declaring that the Department's proposed tax assessment of Trailer Train's property for the 1982 tax year violates § 306, and seeking to enjoin the Department from collecting and assessing *ad valorem* taxes against it for the 1982 tax year.[1]

---

\* Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. This case requires another consideration of the wording, construction, interpretation and application of Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94–210, 90 Stat. 31, 54 (1976) recodified with some differences in language at 49 U.S.C. § 11503 (Supp.1987). Since the recodification was not intended to cause any substantive changes, "We shall read section 11503 in light of section 306 and the legislative history, resolving ambiguities in favor of the original language." *Southern Ry. Co. v. State Board of Equalization,* 715 F.2d 522, 523–24 n. 1 (11th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). This court will refer only to the provisions of § 306 except when making comparisons to 49 U.S.C. § 11503. For a consistent holding, *see Clinchfiled RR. v. Lynch,* 700 F.2d 126, 128–29 n. 1 (4th Cir.1983). The Ninth Circuit has held that it is only the amended version in 49 U.S.C. § 11503 which became law because, "The original version of the statute never went into effect." *Arizona v. Atchison, T & S.F. R. Co.,* 656 F.2d 398, 404 (9th Cir.1981). For an apparently contrary Ninth Circuit holding, *see Trailer Train Co. v. State Bd. of Equalization,* 697 F.2d 860, 862 n. 1 (9th Cir.), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983). The purpose of § 306 is "to eliminate the longstanding burden on interstate commerce resulting from discriminatory state and local taxation of common and contract carrier transportation property." *See* S.Rep. No. 630, 91st Cong. 1st Session 1 (1969) which accompanied an earlier version of § 306 that failed to pass. The ultimate legislation was part of a continuum of studies and attempts to address the underlying concern. For a more complete statement of the legislative history of the 4 R. Act and its codifications, *see Southern Ry. Co. v. State Bd. of Equalization,* 715 F.2d 522, 528 (11th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); `Clinchfield R.R. Co. v. Lynch,* 700 F.2d 126, 128 n. 1 (4th Cir.1983); *Ogilvie v. State Bd. of Equalization,* 657 F.2d 204, 206, 208 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981); and *Alabama Great S. RR. Co. v. Eagerton,* 663 F.2d 1036, 1040–41 (11th Cir.1981), *remanding,* 541 F.Supp. 1084 (M.D.Ala.1982).

The full text of § 306 is as follows:

(1) Notwithstanding the provisions of section 202(b), any action described in this subsection is declared to constitute an unreasonable and unjust discrimination against, and an undue burden on, interstate commerce. It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts:

(a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described), for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.

(b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).

(c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.

(d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.

(2) Notwithstanding any provision of section 1341 of title 28, United States Code, or of the Constitution or laws of any State, the district courts of the United States shall have jurisdic-

*Facts and Contentions of Parties*[2]

The State of Florida, through the Department, assesses and taxes all railroad transportation property within the state on an *ad valorem* basis. The state assessment of railroad property is allocated to each county by the Department in accordance with Fla. Stat. § 193.085(4)(b)(4) (1981). The state acts as agent for the several counties in the assessment and collection process.

Trailer Train is a Delaware corporation which owns a pool of specialized railroad cars and equipment. Trailer Train is engaged in the business of leasing railroad cars to a number of railroad companies, some of which are engaged in interstate commerce operations in Florida. Trailer Train's railroad transportation property, (which is its rolling stock) consists solely of tangible personal property. On January 1, 1982, Florida totally exempted business inventory from *ad valorem* taxation Fla. Stat. § 196.185 (1981).

Trailer Train argues that the assessment of its property at 100% of its market value violates § 306(1)(a) when business inventory is totally exempt from *ad valorem* taxation and is not included as a part of "all other commercial and industrial property" market values.[3] Trailer Train also argues that it is protected by § 306(1)(d) and that the assessment of its property is discriminatory and violates § 306(1)(d) when a significant portion of the tangible personal

tion, without regard to amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section, except that—

(a) such jurisdiction shall not be exclusive of the jurisdiction which any Federal or State court may have in the absence of this subsection;

(b) the provisions of this section shall not become effective until 3 years after the date of enactment of this section;

(c) no relief may be granted under this section unless the ratio of assessed value to true market value, with respect to transportation property, exceeds by at least 5 per centum the ratio of assessed value to true market value, with respect to all other commercial and industrial property in the same assessment jurisdiction;

(d) the burden of proof with respect to the determination of assessed value and true market value shall be that declared by the applicable State law; and

(e) in the event that the ratio of the assessed value of all other commercial and industrial property in the assessment jurisdiction to the true market value of all such other commercial and industrial property cannot be established through the random-sampling method known as sales assessment ratio study (conducted in accordance with statistical principles applicable to such studies) to the satisfaction of the court hearing the complaint that transportation property has been or is being assessed or taxed in contravention of the provisions of this section, then the court shall hold unlawful an assessment of such transportation property at a value which bears a higher ratio to the true market value of such transportation property than the assessed value of all other property in the assessment jurisdiction in which is included such taxing district and subject to a property tax levy bears to the true market value of all such other property, and the collection of any ad valorem property tax on such transportation property at a tax rate higher than the tax rate generally applicable to taxable property in the taxing district.

(3) As used in this section, the term—

(a) "assessment" means valuation for purposes of a property tax levied by any taxing district;

(b) "assessment jurisdiction" means a geographical area, such as a State or a county, city, township, or special purpose distinct within such State which is a unit for purposes of determining the assessed value of property for ad valorem taxation;

(c) "commercial and industrial property" or "all other commercial and industrial property" means all property, real or personal, other than transportation property and land used primarily for agricultural purposes or primarily for the purpose of growing timber, which is devoted to a commercial or industrial use and which is subject to a property tax levy; and

(d) "transportation property" means transportation property, as defined in regulations of the Commission, which is owned or used by a common carrier by railroad subject to this part or which is owned by the National Railroad Passenger Corporation.

Pub.L. No. 94–210, 90 Stat. 54–55 (1976).

**2.** The motion was submitted on facts stipulated by the parties. The parties agree that the review is *de novo.*

**3.** Trailer Train did not file a cross appeal but maintains that the district court's judgment is supported by § 306(1)(a) even though its ruling as to § 306(1)(a) was against Trailer Train.

property of other commercial and industrial taxpayers is totally exempt from *ad valorem* taxation.

The Department argues that the total exemption of business inventory need not be added into the calculus to determine levels of assessment of Trailer Train's property because § 306 measures discrimination only between transportation property and commercial and industrial property which is "subject to a property tax levy." The Department asserts that since business inventories are totally exempt from the imposition of *ad valorem* tax, they do not constitute property "subject to a property tax levy" and do not come within the scope of § 306(1)(a). The Department further asserts that, since Trailer Train is not a carrier, it is not protected by § 306(1)(d) and that, in any event, its actions are not discriminatory under § 306(1)(d).

### District Court's Opinion and Order

The district court noted that it had "previously held that *partial* exemptions from taxation of business property impermissibly reduced the assessment ratio of such property as compared to railroad property in violation of 49 U.S.C. § 11503." *See Louisville & Nashville Railroad Co. v. Department of Revenue, etc.*, No. TCA 81–771 (N.D.Fla. June 1983), *aff'd*, 736 F.2d 1495 (11th Cir.1984).[4]

The district court held that the failure of the Department to include the totally exempt business inventory in the assessed value of "other commercial and industrial property" did not violate § 306(1)(a), be-cause it "is not property subject to a property tax levy" as provided by § 306(3)(c). The district court further concluded that the granting of a total exemption could be considered under the catchall "other tax which results in discriminatory treatment" provisions of § 306(1)(d) and that Trailer Train's property was covered by § 306(1)(d) even though Trailer Train is not a "common carrier," or "rail carrier," but is a private carline.

After making *only* these decisions the district court concluded that "[Trailer Train's] motion for partial summary judgment is GRANTED." The district court made no specific findings and reached no specific conclusions as to whether the *total* exemption of business inventory, in fact, discriminates against Trailer Train under the provisions of § 306(1)(d).[5]

This court has considered each decision of the district court and affirms all of its conclusions. The cause will be remanded for further consideration of the issue of discriminatory treatment.

### Section 306(1)(a)

Section 306(1)(a) provides, in pertinent part, that, "The assessment ... of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other *commercial and industrial property* in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property [is prohibit-

---

4. Prior to the said statute which became effective January 1, 1982, Florida law had provided that manufacturing inventories were 99% exempt and that all other inventories were 90% exempt. In *Louisville & Nashville R. Co.*, this court did not address the issue of partial exemption. Apparently, that issue was conceded by the Department in that case. In any event, that case is not conclusive here. This court need not now address whether a *partial* exemption should be merely treated, proportionately, the same as a *total* exemption. The district court did not conclude that its holding in *Louisville and Nashville* was precedentially binding in this case. There is a suggestion in briefs that the partial exemptions considered in *Louisville &*

*Nashville* were applicable only to *locally* assessed property.

5. While in their briefs filed in this court, both parties suggest that the district court may have intended to or did make an ultimate finding of discrimination, this court, after a careful reading of the district court's opinion and order, finds no such finding or conclusion. In any event, the district court made no underlying findings of fact or a legal analysis on this issue which this court can review on appeal. It is not clear whether the stipulated facts were sufficient to allow for a consideration of the issue of "discriminatory treatment."

ed]." [6] (Emphasis added). Section 306(3)(c) provides, in pertinent part, that " 'commercial and industrial property' or 'all other commercial and industrial property' means all property . . .' which is devoted to a commercial or industrial use and which is *subject to a property tax levy*." (Emphasis added).[7]

 A plain reading of the statute makes it apparent that business inventory which is totally exempt from taxation is not "subject to a property tax levy." A review of analogous holdings of other courts reinforces this conclusion.

After considering a similar argument to that made by Trailer Train here, the court in *ACF Industries, Inc. v. Arizona,* 714 F.2d 93 (9th Cir.1983) stated, "The Carlines's first claim is that the state ought to include in its calculation of commercial property all the business inventories in the state (which are categorically exempt from *ad valorem* taxes) in determining the assessment ratio. This claim has nothing to commend it but a careful lawyer's desire to leave no possible theory unexplored. We find no authority requiring untaxed property to be included in an average of assessed value for taxed property." [8] *Id.* at 94.

In *Atchison, Topeka & Santa Fe Railway Co. v. Arizona,* 559 F.Supp. 1237, 1241 (D.Ariz.1983), the court rejected an argument that "subject to a property tax levy" means that it could be taxed if the state *chose* to tax it. The court stated, "Property 'subject to' a tax levy is property which is presently taxed. Property which is for any reason tax-exempt is excluded as a

form of commercial and industrial property." *Id.* at 1245.

In *Burlington Northern Railroad Co. v. Bair,* 766 F.2d 1222 (8th Cir.1985), the court determined that an Iowa rollback and credit scheme which had the effect of exempting ninety-five percent of personal property *owners* from taxation was discriminatory. The court noted that Burlington Northern was "excluded" "from the benefits of personal property tax rollbacks and credits which *most other* taxpayers enjoy." *Id.* at 1224. (Emphasis added). The court's analysis was under § 306(1)(d) rather than § 306(1)(a). The court stated: "In our judgment, section 306(1)(a) covers claims of unequal valuation ratios between railroad and other commercial and industrial property, but not classification discrimination such as is present here. Section 306(1)(d) is a broad provision intended to reach all types of discriminatory tax treatment." *Id.* at 1224.[9]

In *ABF Freight System, Inc. v. Tax Division of the Arkansas Public Service Commission,* 787 F.2d 292 (8th Cir.1986), the court considered a claim by carriers under 49 U.S.C. § 11503a. The court noted that the statute relied upon by the motor carriers "was patterned after and is virtually identical to [§ 306]," and agreed "that cases construing [§ 306] and its legislative history are relevant to an analysis of [49 U.S.C. § 11503a]." *Id.* at 293 n. 1. The court further stated "This court has recognized by implication that courts properly may compare the assessment ratios of only like categories of property. . . ." *Id.* at 298

---

**6.** The codified version of 49 U.S.C. § 11503(b)(1) (Supp.1987), is a condensed, but substantively equivalent, version of § 306(1)(a).

**7.** Section 306(3)(c) is codified, in substantially the same form, as 49 U.S.C. § 11503(a)(4) (Supp.1987).

**8.** In *Clinchfield R. Co. v. Lynch,* 784 F.2d 545, 553 (4th Cir.1986), the court distinguished *ACF Industries,* but stated:

Second, appellants rely on the case of *ACF Industries v. Arizona,* 714 F.2d 93 (9th Cir. 1983), for the proposition that untaxed property should not be included in determining the average of assessed value for fully taxed

property. We agree with the trial court that *ACF Industries* is distinguishable. 605 F.Supp. at 1014. The court in *ACF Industries* was concerned only with totally exempt property, while the tobacco inventories in this case are taxed, but at a reduced rate. The 4–R Act *does not require a state to tax all business personal property;* the state is *free to grant any exemptions.* What the Act does require, however, is that whatever property is taxed should be taxed at a rate that does not discriminate against the railroad property. (Emphasis added).

**9.** It should be noted that § 306(3)(c) doesn't just say "subject to a property tax." It states "subject to a property tax *levy.*" (Emphasis added).

(citing *Ogilvie v. State Board of Equalization*, 657 F.2d 204, 209–10 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Further, "[i]t is clear that Congress intended under [49 U.S.C. § 11503a] 'property of the same type' is to be compared in determining whether a state taxation scheme discriminates against motor carriers." 787 F.2d at 298. The court ultimately concluded that the state did not have to compare both real and personal commercial and industrial property in determining the appropriate assessment ratio for the motor carriers' personal property.

In *Arkansas-Best Freight System, Inc. v. Lynch*, 723 F.2d 365 (4th Cir.1983), motor carriers, again invoking 49 U.S.C. § 11503a, argued that they were being discriminated against because their rolling stock was being appraised for taxation at a higher ratio of true market value than was commercial and industrial *real* property. The court stated,

> They [the motor carriers] claim discrimination because their personal property is taxed at a higher effective rate than commercial and industrial real property. Such a disparity is permissible under the statute. The motor carriers do not contend that their personal property is being appraised for taxation at a higher ratio than other commercial and industrial personal property is so appraised. That being the case, there is no discrimination under § 11503 a.

723 F.2d at 367.

Trailer Train argues that *Ogilvie v. State Bd. of Equalization*, 657 F.2d 204 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981), stands for the proposition that the zero tax assessment level of exempted personal property must be included in determining the tax assessment level of commercial and industrial property. In *Ogilvie*, however, the taxing authorities imposed a tax on the *centrally* assessed railroad property which was not imposed on *locally* assessed nonrailroad property of the same class. The court stated,

> The most obvious form of tax discrimination is to impose a tax on *a class* of rail transportation property that is not imposed on other nonrailroad property of the *same class*. The inclusion of personal property in the assessed value of railroad property and other centrally assessed businesses imposes a personal property tax on *centrally* assessed businesses that is not imposed on *locally* assessed businesses.

657 F.2d at 210. (Emphasis added). (quoting district court opinion). Here, the exemption applies to all businesses, railroad and nonrailroad alike, to the extent they may have business *inventory*.[10] If Trailer Train owns no real estate, it, of course, will not be taxed on such property even though others are. *All* equipment and personal property devoted to a commercial or industrial use and which is not business inventory, is property "subject to a property tax levy" whether it be owned by Trailer Train or any other taxpayer. To the extent Trailer Train owns "business inventory," it cannot, of course, be included in its taxable property.[11]

---

**10.** The legislative history of the Act indicates that Congress was well aware of the property which was to be compared under the provisions of § 306(1)(a). In 1961, there was discussion that the comparison would be based on "all other property in the tax jurisdiction." S.Rep. No. 445, 87th Sess. 1st Sess. 465 (1961). Later the comparison was changed to "commercial and industrial property," with the latter category of property being confined to property "subject to a property tax levy."

**11.** Trailer Train has argued that it is inconsistent to hold that *partially* exempt property must be considered under § 306(1)(a), but that *totally* exempt property need not be. As previously indicated, the former issue is not before this court. It is also not the prerogative of this court to amend the statute in order to correct some perceived inconsistency in application. The following discussion of another provision of § 306 is apt:

> The parties have canvassed at length the 15-year legislative history of the Act, and of the protection against discriminatory state taxation which became § 11503. We find the results of that investigation inconclusive and irrelevant. Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but "(i)n the absence of a clearly expressed legislative intention to the contrary, the language of the statute must ordi-

This court concludes that the *total* exemption of "business inventory" does not, in and of itself, result in a violation of § 306(1)(a).

### Section § 306(1)(d)
### "Any other tax."

■ As noted by the district court, this court has interpreted § 306(1)(d) broadly, stating that the statute was "intended as a catchall to prevent discriminatory taxation of a railroad carrier by any means." (Citing *Alabama Great Southern Railroad Co. v. Eagerton,* 663 F.2d 1036, 1040 (11th Cir.1981) *remanding* 541 F.Supp. 1084 (M.D.Ala.1982)). In *Louisville & Nashville Railroad v. Department of Revenue,* 736 F.2d 1495 (11th Cir.1984), this court held that § 306 extends to de facto discrimination as well as de jure and that discriminatory impact is precluded by the Act. In *Southern Railway Co. v. State Board of Equalization,* 715 F.2d 522 (11th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), this court stated that, "[t]he legislative history and broad language of [§ 306] show Congress possessed a general concern with discrimination *in all of its guises.*" *Id.* at 528. (Emphasis added). We agree with the district court's conclusion that § 306(1)(d) requires consideration of tax exemptions in determining whether there has been discriminatory treatment.[12]

### "Property of Private Carlines"

■ In *Trailer Train Co. v. State Board of Equalization,* 538 F.Supp. 509, 513 (N.D.Cal.1982), the court held that § 306(1)(d) did not apply to carlines, such as Trailer Train here, because 306(1)(d) applies only to a "common carrier by railroad." That holding was specifically rejected in *Trailer Train Co. v. State Board of Equalization,* 710 F.2d 468 (8th Cir. 1983) because of the language in § 306(1)(d) which refers to a tax which "*results* in discriminatory treatment of a common carrier by railroad." *Id.* at 476. (Emphasis added).[13] We adopt the reasoning in the above mentioned Eighth Circuit case which referred to the close relationship between Trailer Train and common carriers, and held that the tax need not be directly imposed on a common carrier in order to be covered by § 306(1)(d). In any event, the required analysis under 306(1)(d) could show an effect on private carlines which directly and integrally impacts on common carriers by railroad.

### Issues On Remand

In *Alabama Great Southern Railroad Co. v. Eagerton,* 663 F.2d 1036, 1041 (11th Cir.1981), *remanding,* 541 F.Supp. 1084

narily be regarded as conclusive." *United States v. James,* 478 U.S. ——, 106 S.Ct. 3116, 3122, 92 L.Ed.2d 483 (1986).... Respondent's position depends upon the addition of words to a statutory provision which is complete as it stands. Adoption of their view would require amendment rather than construction of the statute, and it must be rejected here."
*Burlington Northern Railroad Co. v. Oklahoma Tax Comm'n,* —— U.S. ——, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987).

**12.** In *Ogilvie v. State Bd. of Equalization,* 492 F.Supp. 446, 454 (D.N.D.1980), *aff'd* 657 F.2d 204 (8th Cir.1981), the argument was made by the taxing authorities that "any other tax" does not refer to property ad valorem tax. The court rejected the argument. In several cases, the argument has been made that it refers *only* to property tax. For example, *see Eagerton,* 663 F.2d 1036.

**13.** 49 U.S.C. § 11503(b)(4) does not use the term "results." It refers to a tax "that discriminates against a rail carrier." While the term "results" is not used, the term "rail carrier" is substituted for the term "common carrier by railroad." *Ogilvie,* 657 F.2d 204, partially relies upon an Interstate Commerce Commission definition in holding that the property of carline companies constitute "transportation property." 657 F.2d at 208–09. *See* 49 C.F.R. § 1201(2i)(33) (1987). In *General Am. Transp. Corp. v. Louisiana Tax Comm'n,* 680 F.2d 400 (5th Cir.1982), the court held that specialty cars owned by private car companies were "rail transportation property" under the provisions of § 306(3)(c) because they were "owned or used" by common carriers. The case did not reach the issue of whether the taxation of such cars was to be considered in deciding whether there is discrimination under § 306(1)(d). The case does discuss the close relationship between operating railroads and private rail car companies that furnish cars to shippers. The court stated, "The rolling stock of private car companies is clearly an integral and necessary part of the entire operating unit devoted to rail transportation services." *Id.* at 403.

(M.D.Ala.1982), this court noted that the trial court had not reached the question as to whether a tax was discriminatory under the provisions of § 306(1)(d). This court added,

> We think this is a matter that should initially be presented to the trial court for its determination. In making such determination, the court should consider whether it would be appropriate for it to consider the entire tax structure as applied against railroads and as applied against "all other commercial and industrial businesses by the State of Alabama."

*Id.* at 1041. The same principle applies here.

Since the issue has been discussed in briefs filed in this court, we do note and reject the Department's argument that the analysis should be primarily based on constitutional standards. The issue is not a constitutional one, but one of statutory interpretation and application. *Arizona v. Atchison, Topeka & Santa Fe Railway Co.,* 656 F.2d 398, 405–07, 409–10 (9th Cir.1981).[14] We agree with the conclusion in *Richmond, Fredericksburg & Potomac Railroad Co. v. Department of Taxation,* 762 F.2d 375, 380 n. 4, (4th Cir.1985) that "[i]n essence, discrimination is a 'failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored.' "[15]

The cause is AFFIRMED and REMANDED for further proceedings consistent with this opinion.

---

14. *See also Arizona Pub. Ser. Co. v. Snead,* 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106 (1979).

15. § 306(1)(d) was added at the last minute with little, if any, debate, as a catchall antidiscrimination provision. *Eagerton,* 663 F.2d at 1041. The following cases *may* give some guidance to the district court in making a § 306(1)(d) discrimination analysis: *Kansas City S. Ry. Co. v. McNamara,* 817 F.2d 368 (5th Cir.1987); and *Trailer Train Co. v. State Bd. of Equalization,* 697 F.2d 860 (9th Cir.), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983). This court further notes, but does not suggest its application here, that discriminatory intent is not a precondition to recovery once

disparate impact is shown. *General American Transportation Corporation v. Kentucky,* 791 F.2d 38, 42 (6th Cir.1986); *Louisville & Nashville R.R. Co. v. Department of Revenue,* 736 F.2d 1495, 1496 (11th Cir.1984).

The Department has suggested that the district court erroneously employed a § 306(1)(a) analysis to find discrimination under § 306(1)(d). This court finds no such analysis in the district court opinion and order. The ultimate determination the district court should make is whether there was discriminatory treatment, in any form, as precluded by § 306(1)(d). This will require a broader analysis than is required by § 306(1)(a).